GENERAL MOTORS CORPORATION
and Rawson–Koenig, Inc.,
Petitioners,

v.

HUDIBURG CHEVROLET, INC. and
Hudiburg Chevrolet Holding,
Inc., Respondents.

No. 03–0987.

Supreme Court of Texas.

Argued Sept. 30, 2004.

Decided March 24, 2006.

Rehearing Denied Sept. 22, 2006.

James A. McCorquodale, J. Michael Col-
poys, Vial Hamilton Koch & Knox, LLP,

Dallas, Deron Lynn Wade, Kyle H. Dreyer, Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., Elvin E. Smith III, Strasburger & Price, Michael Ames Hutton, Thomas A. Graves, Figari Davenport & Graves, Jonathan Garret Erwin, A. Erin Dwyer, Figari & Davenport, L.L.P., Dallas, for petitioners.

Richard F. Werstein, Matt Gilmore, Werstein & Wilson, Charles T. Frazier Jr., Gregory J. Lensing, Cowles & Thompson, P.C., Dallas, for respondents.

Justice HECHT delivered the opinion of the Court.

 A truck assembled by attaching a service body (the bed) to a cab chassis (the cab, chassis, and drive train) split apart in a collision and caught fire, injuring the driver and killing the driver of the other vehicle. In the ensuing personal injury and wrongful death suit against the manufacturer of the cab chassis and the dealer who sold the truck and had arranged for it to be assembled, the plaintiffs alleged that the "the vehicle, including its fuel system", was defective and unreasonably dangerous. The plaintiffs did not sue the manufacturer of the service body or the assembler. When that case settled, the dealer brought this action against the manufacturers of the component products, the cab chassis and the service body, for indemnity under the common law and section 82.002 of the Texas Civil Practice and Remedies Code,[1] a provision of the Texas Products Liability Act of 1993,[2] for all losses incurred in the products liability action. We hold, among other things, that:

- the manufacturer of a component product that is not defective, who is innocent of any culpable conduct such as negligence, but who nevertheless owes a duty to indemnify under section 82.002, is also a seller of the component to whom that same duty may be owed in return by the assembler of the finished product, and those duties may offset one another;

- a product manufacturer has a statutory duty to indemnify a seller only if a claimant alleges that the product is defective, and an allegation of a defective finished product includes a component only if the allegation can fairly be read as being directed to the component as well;

- a seller may be "independently liable" within the meaning of section 82.002, and therefore not entitled to statutory indemnity, if its acts or omissions independent of any defect in the manufactured product cause injury, even if a claimant cannot recover against the seller; and

- a product manufacturer's statutory duty to indemnify a seller does not depend on proof of a product defect.

We reverse in part the summary judgments for the component-product manufacturers and, for somewhat different reasons than the court of appeals,[3] remand the case to the trial court for further proceedings.

## I

Robert Seaton was driving a 1987 one-ton truck and trailer down an interstate highway when he was struck from behind by another vehicle. The truck and trailer crossed the median and collided with an oncoming 3/4–ton pickup driven by Ronald Anderson. The trailer broke away from Seaton's truck, and its bed and chassis

1. TEX. CIV. PRAC. & REM. CODE § 82.002.

2. Act of Feb. 24, 1993, 73rd Leg., R.S., ch. 5, 1993 Tex. Gen. Laws 13, as amended.

3. 114 S.W.3d 680 (Tex.App.—Dallas 2003).

separated, pulling the truck's dual fuel tanks' filler systems apart, and spilling fuel. A fire resulted, injuring Seaton and killing Anderson.

The Seaton truck had been sold new nine years earlier by respondent Chevrolet dealer, Hudiburg Chevrolet, Inc. (owned by respondent Hudiburg Chevrolet Holding, Inc., collectively "Hudiburg"). The truck consisted of a drivable chassis, including fuel system, manufactured by petitioner General Motors Corporation ("GM"), and an attached bed, manufactured by petitioner Rawson–Koenig, Inc.'s predecessor, Koenig, Inc. Hudiburg hired B & M Truck Equipment, an approved Rawson–Koenig dealer, to assemble the bed, which was sold in pieces as a kit, and attach it to the chassis to make the finished vehicle.

Seaton and his wife, and Anderson's statutory beneficiaries (collectively "the plaintiffs"), sued Hudiburg and GM, alleging that the 1987 pickup "was originally designed, manufactured and sold" by GM, that it was "distributed and sold" by Hudiburg, that it "had installed on it a service body [i.e., the bed], which was installed by or at the direction of" Hudiburg, and that "[a]t the time the subject motor vehicle was designed, manufactured and sold by [GM and Hudiburg], the vehicle, including its fuel system was defective and unreasonably dangerous". The plaintiffs did not sue Rawson–Koenig or make any other reference in their pleadings to the bed Rawson–Koenig manufactured. Hudiburg, however, asserted cross-claims for contribution and indemnity against Rawson–Koenig as a responsible third party.[4] Hudiburg and GM each settled with the plaintiffs for undisclosed amounts, expressly reserving Hudiburg's right to seek indemnity from GM and Rawson–Koenig.

Hudiburg then brought this suit against GM, Rawson–Koenig, and B & M for indemnity under section 82.002 of the Texas Civil Practice and Remedies Code and the common law. Hudiburg seeks to recover $4.1 million in settlement costs, expenses, attorney fees, and interest, plus the expenses of this action. B & M filed for bankruptcy and was nonsuited. GM and Rawson–Koenig moved for summary judgment on the ground that Hudiburg was independently liable for the plaintiffs' injuries, and therefore not entitled to statutory or common-law indemnification, because (1) it hired B & M, whose service body/chassis attachments and fuel tank filler connections were defective, (2) it failed to inspect the finished truck for defects before selling it, and (3) it sold the truck with defects. Hudiburg responded that it was not independently liable, or at least not as a matter of law, and that even if it was partially liable, it should be entitled to partial indemnification. GM replied that the law does not allow partial indemnification. In addition:

- Rawson–Koenig contended that the plaintiffs' pleadings did not allege that its service body was defective and therefore no right to statutory indemnification against it was triggered;

- Rawson–Koenig contended that a manufacturer cannot, consistent with due process, be required to indemnify a seller's losses without a determination that the manufacturer's product is defective; and

- GM contended that a component-part manufacturer cannot, consistent with due process, incur any liability for

---

4. See Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972–973, amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.03, 2003 Tex. Gen. Laws 847, 855–856, codified as Tex. Civ. Prac. & Rem. Code § 33.004 (providing for claims against responsible third parties).

losses due to defects in a finished product unrelated to the component part, and because it had settled with the plaintiffs, the losses for which Hudiburg sought indemnity necessarily related only to Hudiburg's own conduct or Rawson–Koenig's service body.

Neither GM nor Rawson–Koenig moved for summary judgment on the ground that its product was not defective. Hudiburg's summary judgment evidence included expert testimony by affidavit that both the chassis and the bed were defective because GM supplied a metal filler neck mounting flange to attach the fuel system filler line to the opening for it in the side of the bed, and neither GM nor Rawson–Koenig required a breakaway connection that would have prevented the system from being compromised if the bed and chassis separated, as they did. The trial court granted summary judgment for GM and Rawson–Koenig on all grounds but one. GM agreed that the court would not consider whether Hudiburg had a duty to inspect the completed vehicle before selling it.

(Rawson–Koenig did not make the same agreement.)

The court of appeals reversed and remanded, holding that:

- although the summary judgment evidence established that the bed-chassis separation caused the plaintiffs' injuries, it did not also establish that the separation would not have occurred but for the faulty attachment of the body and chassis, a prerequisite to Hudiburg's independent liability on any theory; [5]

- the plaintiffs' pleadings "may reasonably be construed to include a claim that the service body manufactured by [Rawson–Koenig] was defective"; [6]

- until Rawson–Koenig is held liable for indemnification, its due process claim is premature; [7] and

- absent proof that GM would be required to indemnify Hudiburg for losses not attributable to GM's chassis, GM's due process claim failed. [8]

**5.** 114 S.W.3d at 686 ("Because the summary judgment evidence failed to establish as a matter of law that, but for the negligent attachment or installation of the service body, the injuries of the underlying plaintiffs would not have occurred, GM and Rawson failed to establish B & M's negligence, if any, proximately caused the injuries of the underlying plaintiffs. Moreover, because there is no evidence establishing that B & M's negligence, if any, proximately caused the underlying plaintiffs' injuries as a matter of law, it necessarily follows that the trial judge could not have properly granted summary judgment in favor of GM and Rawson on the grounds that Hudiburg's vicarious liability and failure to inspect constituted 'negligence, intentional misconduct, or [an] other act or omission' which barred its indemnity claim.").

**6.** *Id.* at 687–688 ("In this case, the underlying plaintiffs' petition alleged a products liability action involving 'the Chevrolet pickup [which]

had installed on it a service body.' This language, together with the factual allegations in the plaintiff's petition, may reasonably be construed to include a claim that the service body manufactured by Rawson was defective.").

**7.** *Id.* at 688 ("Because whether Rawson will be ordered to indemnify Hudiburg remains hypothetical, any discussion on this issue would be purely advisory.").

**8.** *Id.* ("The gist of GM's constitutional challenge, however, is that because GM 'extinguished its potential exposure' for claims involving any purported defects associated with the fuel system by settling with the underlying plaintiffs, requiring GM to indemnify Hudiburg for any remaining settlement amounts 'would be overwhelmingly arbitrary and irrational.' ... [N]othing in the record establishes what portion of the total settlement was attributable to the alleged fuel system defects or what amount was paid by GM.").

We granted both GM's and Rawson–Koenig's petitions for review.[9]

## II

Hudiburg claims both statutory and common-law indemnity, and before turning to the issues, we summarize some of the differences between the two theories as they relate to this case.

■ Under the common law, a person is entitled to indemnity for products liability only if his liability is entirely vicarious[10] and he is not himself independently culpable.[11] The indemnitor must be liable or potentially liable for the product defect,[12] and his liability must be adjudicated or admitted.[13]

■ Section 82.002 of the Texas Civil Practice and Remedies Code[14] creates "a new, distinct statutory duty" of indemnification[15] because it is, by its terms, "in addition to any duty to indemnify established by law, contract, or otherwise."[16] As under the common law, the indemnitee must be innocent. Section 82.002(a) states:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.[17]

To escape this duty to indemnify, the indemnitor must prove the indemnitee's independent culpability.[18] However, the duty to indemnify does not depend on an adjudication of the *indemnitor's* liability, as it does under the common law.[19] This

9. 47 Tex. Sup.Ct. J. 633 (June 11, 2004).

10. *Aviation Office of America, Inc. v. Alexander & Alexander of Texas, Inc.*, 751 S.W.2d 179, 180 (Tex.1988) (per curiam) ("[T]he comparative negligence statute 'has abolished the common law doctrine of indemnity between joint tortfeasors even though the statute does not expressly mention that doctrine.' The only remaining vestiges of common law indemnity involve purely vicarious liability or the innocent product retailer situation.") (quoting *Cypress Creek Util. Serv. Co. v. Muller*, 640 S.W.2d 860, 864 (Tex.1982)); *B & B Auto Supply, Sand Pit & Trucking Co. v. Central Freight Lines, Inc.*, 603 S.W.2d 814, 816–817 (Tex.1980).

11. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432 (Tex.1984) ("Comparative causation does not affect the right of a retailer or other member of the marketing chain to receive indemnity from the manufacturer of the defective product when the retailer or other member of the marketing chain is merely a conduit for the defective product and is not independently culpable.").

12. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex.1989) ("There is no right of indemnity against a defendant who is not liable to the plaintiff.") (citing *Hunter v.*

*Fort Worth Capital Corp.*, 620 S.W.2d 547, 553 (Tex.1981)).

13. *Humana Hosp. Corp. v. American Medical Systems, Inc.*, 785 S.W.2d 144, 145 (Tex.1990) (stating that a person has no duty to indemnify until his liability to the claimant is judicially determined or admitted).

14. Tex. Civ. Prac. & Rem. Code § 82.002.

15. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex.1999).

16. Tex. Civ. Prac. & Rem. Code § 82.002(e)(2).

17. *Id.* § 82.002(a).

18. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86,91 (Tex.2001) ("[F]or the Manufacturers to implicate section 82.002(a)'s exception to that duty, it must be established that seller's conduct 'caused' the loss. [T]he statute's plain language indicates that the plaintiff's pleadings are not sufficient to invoke the exception.").

19. *Fitzgerald*, 996 S.W.2d at 867 ("An action may be concluded with a settlement, in which no underlying facts are admitted or estab-

follows from section 82.002(e)(1), which states that "[t]he duty to indemnify under this section ... applies without regard to the manner in which the action is concluded" [20]—whether by judgment, settlement, or dismissal. The duty to indemnify is triggered by the injured claimant's pleadings. Referring to notice provisions in section 82.002(f), we have stated that "the duty is imposed only on 'the manufacturer of a product claimed in a petition or complaint to be defective' ".[21]

█ A "products liability action", "seller", and "manufacturer" are defined in section 82.001(2)-(4) as follows:

"Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

"Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.

"Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.[22]

By these definitions, all manufacturers are also sellers, but not all sellers are manufacturers. With one exception, nothing in the statute precludes one person from being both with respect to the same product or its components. The exception is in section 82.002(d), which states:

For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.

█ The overlap in the definitions of "manufacturer" and "seller" is important, for example, in indemnity claims between component-product manufacturers and finished-product manufacturers. Under the statute, and disregarding the exception in section 82.002(d), the manufacturer of a component product alleged by a claimant to be defective has a duty to indemnify an innocent seller/manufacturer of a finished product which incorporates the component from loss arising out of a products liability action related to the alleged defect, but the manufacturer of an allegedly defective finished product has a duty to indemnify the innocent seller/manufacturer of a component product for the same loss. If neither

---

lished and the liability of a defendant seller or a defendant manufacturer is not determined. A seller of a manufacturer's product who is alleged to have sold the product to the plaintiff should not be denied indemnity if it proves that it is innocent but given indemnity if he settles without admitting or denying the fact.").

**20.** Tex. Civ. Prac. & Rem. Code § 82.002(e)(1).

**21.** *Fitzgerald,* 996 S.W.2d at 866 (citing Tex. Civ. Prac. & Rem. Code § 82.002(f) ("A seller eligible for indemnification under this section

shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.")); *see Meritor,* 44 S.W.3d at 89 ("Thus, under (e)(1), it is the manufacturer's 'duty to indemnify' that applies regardless of outcome, and plaintiff's pleadings are accordingly sufficient to invoke that duty.").

**22.** Tex. Civ. Prac. & Rem. Code § 82.001(2)-(4).

the component-product manufacturer nor the finished-product manufacturer is innocent, depending not on allegations but on proof, both indemnity claims under the statute will fail. If both are innocent, again depending on proof, the indemnity claims offset each other.

With these concepts in mind, we turn to the issues raised by the parties.

## III

### A

 Rawson–Koenig argues that the plaintiffs' pleadings did not allege a defect in its product, the service body, so as to give Hudiburg a right of indemnity against Rawson–Koenig under section 82.002. Like the court of appeals, we do not agree with Rawson–Koenig that a claimant's pleadings must actually name a manufacturer to invoke a right of indemnity under section 82.002.[23] The notice provision in section 82.002(f) on which the pleading requirement is partially based refers only to a "manufacturer of a product claimed in a petition or complaint to be defective".[24] Although we have written that under section 82.002 "the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant,"[25] we did not suggest that joinder as a party was necessary for a right of indemnity, only that it was sufficient. Nor do we agree that an allegation that a product is defective necessarily includes assertions that all of its components are defective. Otherwise, the seller of a vehicle alleged to be defective could claim indemnity from the hubcap manufac-

turer, even though the hubcaps had nothing to do with the claimant's injuries. It is one thing to give a seller indemnity for defending unproved claims that a product is defective; it would be quite another to give a seller indemnity for defending unproved claims that were never even made. Section 82.002 is not so broad. Rather, we agree with the court of appeals that in order for a component-product manufacturer to be subject to a duty to indemnify a seller under section 82.002, the claimant's pleadings must fairly allege a defect in the component itself, not merely a defect in the seller's product of which the component was part.

The plaintiffs' pleadings, the relevant portions of which we have quoted above, alleged only that the Seaton truck "had installed on it a service body", and that "the vehicle, including its fuel system was defective". The court of appeals concluded that the reference to the installed service body, "together with the factual allegations in the plaintiff's petition, may reasonably be construed to include a claim that the service body manufactured by Rawson was defective."[26] We disagree. The mere reference to the installed service body, even in the context of the plaintiffs' other assertions, does not suggest that the plaintiffs considered the service body itself to be defective. Hudiburg argues that the allegation that "the vehicle ... was defective" includes an assertion that the service body was defective because "vehicle" includes the service body. But "vehicle" also includes hubcaps. The plaintiffs' allegations that the vehicle was defective cannot fairly be read to include the assertion that its

**23.** 114 S.W.3d 680, 686 (Tex.App.—Dallas 2003).

**24.** Tex. Civ. Prac. & Rem. Code § 82.002(f); *Fitzgerald,* 996 S.W.2d at 866 ("the duty is imposed only on 'the manufacturer of a product claimed in a petition or complaint to be

defective,' because of the notice provision in subsection 82.002(f)").

**25.** *Meritor,* 44 S.W.3d at 91.

**26.** 114 S.W.3d at 688.

components, including the service body, were also defective. It is a closer call whether the plaintiffs' allegation that the fuel system was defective implicated the service body. As noted above, Hudiburg's summary judgment evidence includes expert testimony that the service body was defective because the chassis' fuel system could be attached without a breakaway connection. But no such defect is suggested by the plaintiffs' pleadings in the personal injury suit, and it is not enough that Hudiburg has been able to assert one since that suit ended. The fuel system was undisputedly part of the chassis, and GM supplied the metal flange to connect the filler line to the bed; the bed had only a hole where the filler pipe was to be attached. Even if Hudiburg were right in its own claim that Rawson–Koenig should have required a breakaway connection instead, the plaintiffs' pleadings in the personal injury suit cannot fairly be read to include such a claim. If Hudiburg had wanted greater clarity in the plaintiffs' pleadings, it could have filed special exceptions. We conclude that the service body itself was not "a product claimed in a petition ... to be defective" within the meaning of section 82.002.

Accordingly, we conclude that Hudiburg has no right to indemnity against Rawson–Koenig under section 82.002.

## B

■ GM and Rawson–Koenig argue that the summary judgment record estab-

lishes that Hudiburg was independently liable for the loss resulting from the defective 1987 truck, and therefore it is not entitled to indemnity under section 82.002 or the common law. Specifically, GM and Rawson–Koenig contend that Hudiburg was liable for hiring B & M to attach the service body to the chassis and make fuel tank filler connections, failing to inspect the finished truck, and selling the truck with defects. The court of appeals concluded that, assuming the bed was improperly fastened to the chassis, the record does not establish that the improper attachment caused the fire that injured Sloan and killed Anderson.[27] In other words, the court of appeals concluded that the record does not establish that the same fire would not have occurred simply because of the violence of the collision, no matter how firmly the service body had been attached to the chassis.

GM and Rawson–Koenig complain that the court of appeals' assessment of the record was lacking. They point to the following:

- Hudiburg responded to a request for admissions that it "believes the fuel filler system was improperly attached by B & M to the Koenig service body".

- At the summary judgment hearing in the trial court, Hudiburg's counsel did not in the end identify causation as an issue.[28]

27. 114 S.W.3d at 687–688.

28. "THE COURT: Let me see if I can boil this down, the areas of disagreement, if you will. Are there—are these the two areas of disagreement? Number one: whether you can have a partial/comparative indemnity is one area of disagreement; i.e., if we accept that Hudiburg did something wrong and someone else may have also, can a piece of that loss be apportioned to Hudiburg and the rest indemnified under chapter 82. That's one point of

disagreement. That sounds to me like a legal question, actually. The second point of disagreement is whether or not Hudiburg did anything wrong by virtue of outsourcing the assembly of this service body to this chassis to an independent contractor, and then taking it back and selling it to the ultimate consumer, because we all agree that in that process— there is evidence that's not been rebutted that that process went awry, i.e., the process of the attachment. And Hudiburg's point on that:

- Hudiburg's expert witness stated in his affidavit that "the fuel filler system was an integral part of the product manufactured by [Rawson–Koenig] and the failure of [Rawson–Koenig] to provide a safe method for attaching the fuel filler hose to the service body was a contributing cause of the filler hose tearing loose which in turn contributed to the fire".
- GM's expert witness stated in his affidavit that:
 - The truck was "defectively completed and/or modified after it left GM's possession".
 - "Enhancement of this post-crash fire did result from utility truck fuel system damage. That fuel system's major damage, however, would not have occurred but for separation of the poorly attached service/utility body from the Seaton truck's chassis."
 - "Considering the improper attachment of the service body on the vehicle and [Hudiburg's] actions prior to sale of the vehicle ..., I believe [Hudiburg] was negligent in failing to insure that the modifications to the vehicle made at their direction were properly performed .... An inspection by [Hudiburg] prior to delivery of the vehicle ... would have revealed the improper attachment of the service body .... [Hudiburg's] negligence, which resulted in the vehicle's being delivered ... with the service bed improperly attached to the back of the Seaton vehicle, is causally related to the injuries at issue in the underlying lawsuit filed by the Original Plaintiffs."

The closest this evidence comes to establishing that the faulty attachment of the service body to the chassis caused the plaintiffs' loss is the last sentence quoted above, obliquely stating that the attachment and loss were "causally related", and the expert's assertion that the fuel filler hose connection "contributed to the fire". This evidence is simply too vague to do more than raise a fact issue. Considering this evidence as well as the entire record, we think the court of appeals was correct: the record does not establish that Seaton and Anderson's injuries would have been different had the fuel filler line been connected differently and the service body fastened to the chassis frame as securely as GM contends it should have been.

▆▆ Apart from this deficit in the summary judgment record, Hudiburg argues that its acts and omissions asserted by GM and Rawson–Koenig do not amount to independent liability under the common law or section 82.002, as a matter of law. Specifically, Hudiburg argues that selling the truck with defects should not affect its right to indemnity under a statute whose very purpose is to provide sellers relief as against manufacturers, that it had no duty to inspect the truck before the sale, and that it was not responsible for B & M, an independent contractor and authorized Rawson–Koenig dealer. We agree that merely selling a defective truck was not independent liability, either under the common law or within the meaning of sec-

it's not our fault because it was an independent contractor. And GM and Rawson–Koenig's point is: you can't absolve your independent liability for the outsourcing that you did and then turned around and sold it to the ultimate consumer. Have I gotten those two, and are those the points in which you disagree, that sort of—that either rise or fall on—
 "[Hudiburg's counsel]: Yes, Your Honor. That is the way I see it.
 "THE COURT:—on summary judgment?"

tion 82.002, and we need not consider whether Hudiburg had a duty to inspect the truck after it was finished. If B & M's faulty assembly of the truck caused Seaton's injuries and Anderson's death, that fault was attributable to Hudiburg, who arranged for B & M to assemble the truck, and precludes indemnity.

To repeat, section 82.002(a) states that:

A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.[29]

Hudiburg argues that by this provision a seller is entitled to indemnity unless it is liable to the claimant on some theory other than products liability. Hudiburg continues that because B & M was an independent contractor for whose acts and omissions it was not liable, it may still obtain indemnity from GM and Rawson–Koenig even if B & M's work was faulty. We think this reading of the exception in section 82.002(a) is too narrow. Even if Hudiburg was not liable to the plaintiffs apart from its products liability as a seller, we think it is not entitled to indemnity under the statute or the common law if the plaintiffs' loss was caused, not by alleged defects in GM's chassis or Rawson–Koenig's service body, but by acts or omissions attributable to Hudiburg independently. Hudiburg does not contend that GM or Rawson–Koenig had any involvement in the assembly of the truck. If Hudiburg had negligently assembled the truck itself, it certainly would not be entitled to indemnity; it should not be entitled to indemnity simply because it hired B & M to do the assembly. The purpose of the statute, like the common law, is to protect innocent sellers. A seller who has a product altered in a way that causes loss is not, at least in relation to the manufacturer, innocent, even if the seller cannot be held liable to an injured plaintiff for its conduct.

Thus, GM is not liable to indemnify Hudiburg, either under the common law or by statute, for loss attributable to Hudiburg independently. Nor is GM liable to indemnify Hudiburg under the common law except to the extent GM was itself at fault. But if Hudiburg assembled the truck in accordance with GM's instructions, then GM is statutorily liable to indemnify Hudiburg for loss, except that attributable to Hudiburg independently. If Hudiburg did not assemble the truck in accordance with GM's instructions, then GM and Hudiburg each owes the other a statutory duty to indemnify except for loss attributable to the other.

Hudiburg argues that it may be entitled to partial indemnity. The record before us contains evidence that GM, Rawson–Koenig, and their respective products were responsible for the plaintiffs' injuries, but that evidence only raises fact questions. The record does no more than hint that Hudiburg may have shared responsibility for the plaintiffs' injuries with either or both of the component product manufacturers. Without further development of the record, we decline to consider whether or under what circumstances a seller may obtain partial indemnity under section 82.002.

Accordingly, we conclude that GM and Rawson–Koenig were not entitled to summary judgment that Hudiburg's independent liability precluded it from obtaining indemnity.

---

29. TEX. CIV. PRAC. & REM. CODE § 82.002(a).

## C

Rawson–Koenig argues that to require a manufacturer to indemnify a seller's losses without a determination that the manufacturer's product is defective violates constitutional due process. Since such a determination is required by the common law, as we have already explained, and since we have concluded that Rawson–Koenig has no duty to indemnify under section 82.002, we need not consider its constitutional argument.

## D

██ GM argues that section 82.002 does not require a component-product manufacturer to indemnify a finished-product manufacturer against losses arising from defects in the finished product unrelated to the component. GM contends that it settled all claims that its chassis was defective, and therefore the only remaining claims—and those for which Hudiburg seeks indemnity—necessarily relate to the service body or its attachment to the chassis, claims for which GM has no duty to indemnify. If the statute were construed to impose such a duty, GM argues, it would violate constitutional due process.

We addressed GM's statutory construction argument last Term in *Bostrom Seating, Inc. v. Crane Carrier Co.*[30] In that case, Gonzales was injured while driving a garbage truck built by Crane Carrier using a driver's seat manufactured by Bostrom Seating.[31] Gonzales sued Crane Carrier but not Bostrom Seating, and alleged that the truck but not the seat was defec-

tive.[32] Crane Carrier brought a third party action against Bostrom Seating for common-law and statutory indemnity.[33] The trial court directed a verdict for Bostrom Seating, and when the jury deadlocked on Gonzales's claims, severed the directed verdict from the action to make it a final judgment.[34] We concluded that there was evidence only that the seat should not have been used in the truck and no evidence that the seat itself was defective.[35] We held that "if the component-part manufacturer does not participate in the integration of the component into the finished product, it is not liable for defects in the final product if the component itself is not defective."[36]

██ Hudiburg argues that *Bostrom* was wrongly decided because it requires *evidence,* not merely an *allegation,* of defect in a manufacturer's product to trigger statutory indemnity. We agree, as we have already explained, that the statutory duty to indemnify is triggered by a claimant's pleadings, not by proof of defect, but we do not agree that *Bostrom* was wrongly decided. The focus on the evidence in *Bostrom,* as opposed to the pleadings, was due to the fact that the case had been fully tried, and Bostrom Seating had obtained a directed verdict. We might have held, and should better have explained, that Gonzales never *alleged* that the seat was defective, and for that reason alone, Crane Carrier was not entitled to statutory indemnity, in accordance with our prior holdings.[37] But the result in *Bostrom* was correct: section 82.002 does not impose on

---

30. 140 S.W.3d 681 (Tex.2004).

31. *Id.* at 682.

32. *Id.*

33. *Id.*

34. *Id.*

35. *Id.* at 684–685.

36. *Id.* at 683.

37. *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 91 (Tex.2001) ("the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings").

a component-product manufacturer a duty to indemnify for losses due to alleged defects unrelated to its component.

Thus, GM has no statutory duty to indemnify Hudiburg for losses arising out of the plaintiffs' action due to allegations that the truck, as distinct from one of its components, the chassis, was defective—just as the truck in *Bostrom* was distinct from one of its components, the seat. Hudiburg is entitled to statutory indemnity from GM only for losses related to allegations that the chassis was defective, and only then if Hudiburg was not independently liable, as we have explained. We agree with the court of appeals that the summary judgment record does not establish that the indemnity claimed against GM is solely for losses unrelated to any defect in its chassis. We cannot determine to what extent, if at all, Hudiburg defended and settled the plaintiffs' claims even insofar as they may have related to the chassis. We also note, given the overlapping definitions of "manufacturer" and "seller" in section 82.001, that GM would be entitled to statutory indemnity from Hudiburg—although GM has not sought indemnity—for losses related to allegations of defects unrelated to the chassis, if GM was not independently liable for such losses.

■ The purpose of section 82.002 is to protect innocent sellers who are drawn into products liability litigation solely because of the vicarious nature of that liability by assigning responsibility for the burden of the litigation to product manufacturers. To allow a finished-product manufacturer to shift the burden of products liability litigation to component-product manufacturers whose products are unrelated to any allegations of defect would certainly work an injustice. Because we do not construe section 82.002 to reach such a result, we need not consider GM's

argument that a different construction would violate due process.

\* \* \* \* \* \*

For these reasons, the court of appeals' judgment is modified to affirm the summary judgment for Rawson–Koenig on Hudiburg's claim for statutory indemnity. As modified, the judgment is affirmed, and the case is remanded to the trial court for further proceedings.