# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0425
════════════

PETROLEUM SOLUTIONS, INC., PETITIONER,

v.

BILL HEAD D/B/A BILL HEAD ENTERPRISES AND TITEFLEX CORPORATION,
RESPONDENTS

════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
════════════════════════════════════════════════════

**Argued December 4, 2012**

JUSTICE BOYD, dissenting in part.

The Court holds in this case that the trial court abused its discretion by charging the jury with a spoliation instruction and striking Petroleum Solutions's statute-of-limitations defense because those sanctions do not comport with the standards set forth in our recent decision in *Brookshire Bros., Inc. v. Aldridge*, ___ S.W.3d ___ (Tex. 2014). I agree, and I join that part of the Court's opinion. But the Court also holds that section 82.002 of the Texas Civil Practices and Remedies Code requires Petroleum Solutions to indemnify Titeflex for the attorney's fees and expenses Titeflex incurred in defending against allegations that Titeflex manufactured and sold a defective flex connector. Until now, we have consistently held that, in a products liability action involving allegations that more than one product is defective, section 82.002 requires a manufacturer to indemnify another manufacturer only against losses arising from allegations that the first

manufacturer's product was defective. And, conversely, we have held that the statute does not require the first manufacturer to indemnify the second manufacturer against losses arising from allegations that the second manufacturer's own product was defective. Because Titeflex incurred all of the losses for which it seeks indemnity in this case defending against claims that Titeflex's own flex connector was defective, and because Petroleum Solutions is not the manufacturer of Titeflex's allegedly defective flex connector, I respectfully dissent from that part of the Court's judgment.

## I.
## The Duty, the Scope, and the Exception

Section 82.002(a) of the Texas Civil Practices and Remedies Code provides that "[a] manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's . . . act or omission . . . for which the seller is independently liable." TEX. CIV. PRAC. & REM. CODE § 82.002(a). A "products liability action" is "any action against a manufacturer or seller for recovery of damages . . . allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." *Id.* § 82.001(2). Reading this language within the context of the rest of chapter 82, we have construed the statute to address three main issues: (1) who has the duty to indemnify a seller in a products liability action, (2) what is the scope of that duty, and (3) when does the exception to the duty apply?

As to the issue of who has the duty, we have explained that "[t]he duty to indemnify is triggered by the injured claimant's pleadings," and "is imposed only on 'the manufacturer of a

2

product claimed in a petition or complaint to be defective.'" *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex. 2006) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) (quoting TEX. CIV. PRAC. & REM. CODE § 82.002(f)). The pleadings need not "actually name" the manufacturer to trigger the manufacturer's duty, *id.* at 257, but they must at least allege that the manufacturer's product was defective. *Id.*; *see also Fitzgerald*, 996 S.W.2d at 867 ("[O]nly manufacturers of a product alleged by a plaintiff to have been defective are subject to a claim of indemnity.").

As to the scope of the manufacturer's duty, we held in *Fitzgerald* that the manufacturer must indemnify "[a]nyone who qualifies as a 'seller,'" even if the seller is not "proven to have been in the chain of distribution." 996 S.W.2d at 867 (citing TEX. CIV. PRAC. & REM. CODE § 82.001(3)). We later held that the statute requires the manufacturer of the allegedly defective product to indemnify the seller against "all direct allegations against the seller that relate to [the] plaintiff's injury." *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001). We clarified that the duty includes an obligation to pay the attorney's fees and costs that a seller incurs defending against claims that the seller negligently maintained the product and was therefore independently liable for the plaintiff's injuries. *Id*. at 87.

Finally, addressing the statutory exception to the duty, we have explained that, although the duty is triggered by the pleadings, the exception applies only upon an actual finding, and not merely an allegation, "that the seller's independent conduct was a cause of the plaintiff's injury." *Id*. at 91; *see also id*. at 90 (holding that the statute excepts from the duty "only those losses 'caused by' the seller") (quoting TEX. CIV. PRAC. & REM. CODE § 82.002(a)). Thus, "[t]o escape this duty to

indemnify, the [manufacturer] must prove the [seller's] independent culpability." *Hudiburg*, 199 S.W.3d at 255.

## II.
## Multiple-Product Cases

While our holdings on these three issues are relatively straightforward, construing the statute becomes significantly more complicated when a single products liability action includes allegations that two or more different products, each produced by a different manufacturer, are defective. Such an action may involve allegations that multiple different products produced by separate manufacturers are defective, *e.g.*, *Owens & Minor, Inc. v Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481 (Tex. 2008), or allegations that a finished product and one or more of its component parts (which themselves are also products) are defective, *e.g.*, *Hudiburg*, 199 S.W.3d at 253. Under the statute's definitions, "all manufacturers are also sellers." *Id*. at 256. Thus, in actions involving allegations that more than one manufacturer's product was defective, each manufacturer owes a duty to indemnify, but each is also a "seller" and thus entitled to be indemnified. Multiple-product cases thus present issues of which manufacturers owe a duty to indemnify whom, and what happens if the different manufacturers all owe a duty to each other and to other sellers.

Unfortunately, the statute does not explicitly address product liability actions involving multiple allegedly defective products. We have construed and applied the statute, however, to cases involving allegations that multiple different products are defective and cases involving allegations that a finished product and one or more of its component parts are defective. In both types of cases, we have consistently held that each manufacturer of an allegedly defective product must indemnify

4

against losses related to allegations of a defect in its own product but need not indemnify another manufacturer against losses related to the other manufacturer's allegedly defective product. Today, the Court modifies—or, perhaps, abandons—this rule, holding that the manufacturer of a finished product must indemnify the manufacturer/seller of a component part of the finished product, even against losses related to allegations that the seller's own component part was itself defective, unless the component-part manufacturer is actually found liable.

We first addressed these issues in the context of a finished-product/component-product scenario in *Hudiburg*, specifically to decide whether the statute required component-part manufacturers to indemnify a dealer (a "seller" under the statute) who sold the finished product that contained the component parts. To resolve the duty issue, we returned to the basic rule discussed above: "the duty [to indemnify] is imposed only on 'the manufacturer of a product claimed in a petition or complaint to be defective.'" *Hudiburg*, 199 S.W.3d at 256 (quoting *Fitzgerald*, 996 S.W.2d at 866 (citing TEX. CIV. PRAC. & REM. CODE § 82.002(f)). Applying this rule in the component-part context, we concluded that the statute imposes the duty to indemnify on each manufacturer of each component part that the claimant alleges to be defective. We rejected the argument, however, "that an allegation that a [finished] product is defective necessarily includes assertions that all of its components are defective." *Hudiburg*, 199 S.W.3d at 257. Instead, we held that a pleading triggers a component-part manufacturer's duty to indemnify only if the pleading

5

"fairly allege[s] a defect in the component itself, not merely a defect in the [finished] product of which the component was part." *Id*.[1]

We also addressed in *Hudiburg* the scope of the duty to indemnify in a multiple-product case. GM, which had manufactured one of the allegedly defective component parts (the truck chassis), argued that the statute "does not require a component-product manufacturer to indemnify a finished-product manufacturer against *losses arising from defects in the finished product unrelated to the component*." *Id*. at 261 (emphasis added). GM asserted that since it had settled all claims that its component part (the chassis) was defective, "the only remaining claims—and those for which [the seller] seeks indemnity—necessarily relate to [a different component part] or its attachment to the chassis, claims for which GM has no duty to indemnify." *Id*.

We agreed that the statute "does not impose on a component-product manufacturer a duty to indemnify for *losses due to alleged defects unrelated to its component*." *Id*. at 261–62 (emphasis added). We thus held that GM had "no statutory duty to indemnify [the seller] for losses arising out of the plaintiffs' action due to allegations that the truck, as distinct from one of its components, the chassis, was defective." *Id*. at 262. Even though GM was the manufacturer of an allegedly defective product in this products liability action and thus had the statutory duty to indemnify sellers for their losses in the action, we held that the scope of that duty only covered "losses related to allegations that the chassis was defective." *Id*. We ultimately concluded, however, that the court of appeals had

---

[1] In *Hudiburg*, we discussed the similar decision we issued the previous year in *Bostrom Seating, Inc. v. Trane Carrier Co*., 140 S.W.3d 681 (Tex. 2004), in which the manufacturer of a garbage truck sought indemnity from the manufacturer of the driver's seat that was incorporated into the truck. The claimant in that case alleged that the garbage truck was defective but "never alleged that the seat was defective, and for that reason alone," we held, the seat's manufacturer had no statutory duty to indemnify the manufacturer/seller of the truck. *Hudiburg*, 199 S.W.3d at 261.

correctly reversed a summary judgment in GM's favor because the record did "not establish that the indemnity claimed against GM is solely for losses unrelated to any defect in its chassis." *Id*.

In the case before us today, the Court relies on language from a paragraph that appears earlier in our *Hudiburg* opinion, in which we introduced concepts related to indemnity claims between component-product manufacturers and finished-product manufacturers with the following four statements:

[1]     "the manufacturer of a component product alleged by a claimant to be defective has a duty to indemnify an innocent seller/manufacturer of a finished product which incorporates the component from loss arising out of a products liability action related to the alleged defect";

[2]     "the manufacturer of an allegedly defective finished product has a duty to indemnify the innocent seller/manufacturer of a component product for the same loss";

[3]     "[i]f neither the component-product manufacturer nor the finished-product manufacturer is innocent, depending not on allegations but on proof, both indemnity claims under the statute will fail"; and

[4]     "[i]f both are innocent, again depending on proof, the indemnity claims offset each other."

*Hudiburg*, 199 S.W.3d at 256–57.

These statements are consistent with our basic rules and the actual holdings that we announced later in our *Hudiburg* opinion. The first statement is straightforward: if a claimant alleges that a component product is defective,[2] the manufacturer of that component product[3] has a

_____

[2] "The duty to indemnify is triggered by the injured claimant's pleadings." *Hudiburg*, 199 S.W.3d at 256.

[3] The duty to indemnify "is imposed only on 'the manufacturer of a product claimed in a petition or complaint to be defective.'" *Fitzgerald*, 996 S.W.2d at 866 (quoting TEX. CIV. PRAC. & REM. CODE § 82.002(f)).

duty to indemnify any seller (which would include the finished product manufacturer)[4] from loss arising out of a products liability action *to the extent the loss is "related to the alleged defect" in the component product*.[5] The second statement is consistent and correct for the same reasons: if the claimant alleges that the *finished* product is defective, the manufacturer of the *finished* product must indemnify sellers (including manufacturers of *component* parts included within the finished product) for their losses, *but only to the extent that their losses are related to the alleged defect in the finished product.*

If the claimant alleges that both the component part and the finished product containing it are defective, then under the first two statements each manufacturer will owe a duty to indemnify the other (because each is both a manufacturer of an allegedly defective product and a "seller" in the products liability action), unless the other is actually found to be independently liable, thus triggering the exception.[6] The third statement is thus also correct: "if neither of the manufacturers is innocent, depending on proof," can only mean that the jury or court actually finds that they are both independently liable, and in that case the exception to the duty to indemnify would apply to both manufacturers' duties. Because of the exception, "both indemnity claims under the statute will fail." And the fourth statement—"if both are innocent, again depending on proof"—can only refer

---

[4] The manufacturer must indemnify "[a]nyone who qualifies as a 'seller,'" even if the seller is not "proven to have been in the chain of distribution." *Fitzgerald*, 996 S.W.2d at 867.

[5] The scope of the duty only covers "losses related to allegations that the [component part] was defective," and does not include "losses due to alleged defects unrelated to its component." *Hudiburg*, 199 S.W.3d at 262.

[6] The applies only upon a finding, and not merely an allegation, "that the seller's independent conduct was a cause of the plaintiff's injury." *Meritor Auto.*, 44 S.W.3d at 91.

8

to the situation in which there is no finding that either is independently liable, so the exception does not apply to either and each still owes a duty to indemnify the other, so one would offset the other.[7]

But, as the remainder of our *Hudiburg* opinion explains, all of these statements are necessarily subject to the limit on the scope of the duty described in the first statement. Today, the Court construes these statements to mean that, "[i]f competing duties to indemnify are triggered, the ultimate success of those claims will depend on what the evidence shows as to the fault of the indemnitee sellers." *Ante* at ___. This construction is correct only to the extent it refers to the issue of whether the exception applies to either manufacturer's duty to indemnify, because it is only the exception (and not the duty) that "depend[s] on what the evidence shows." More importantly, this statement ultimately overlooks what we said in *Hudiburg* regarding the limits to the *scope* of the manufacturers' respective duties even in the absence of the exception. The Court says, for example, that we held in *Hudiburg* that "GM owed Hudiburg a duty to indemnify *for losses related to the personal injury suit*, to the extent Hudiburg was not independently liable." *Ante* at ___ (emphasis added). That is simply not what we said in *Hudiburg*; to the contrary, what we actually said was that GM owed Hudiburg a duty to indemnify to the extent of any "*losses related to allegations that [GM's component part] was defective*," and does not include "losses due to alleged defects *unrelated to its component*." *Hudiburg*, 199 S.W.3d at 262 (emphases added).

---

[7] In this regard, I do not understand the Court's statement that, "[w]hen these competing claims [for indemnity] are pursued, *Hudiburg* explains that the burden [to indemnify] will ultimately fall on the party whose product is *found* to be defective." *Ante* at ___ (emphasis added). We have repeatedly held, including in *Hudiburg*, that the duty to indemnify is triggered by an *allegation*, not a *finding*, that a product is defective. *Hudiburg*, 199 S.W.3d at 256. A finding that the seller is independently liable will create an exception to the other manufacturer's duty to indemnify, but each manufacturer's duty to indemnify exists regardless of whether its product is "found to be defective." An allegation triggers the duty; a finding triggers the exception, not the duty.

Continuing to overlook the limits on the scope of indemnity in a multiple products action, the Court goes on to hold that, based on the allegations in this case that Titeflex's flex connector (the component product) and Petroleum Solutions' fuel system (the finished product) were both defective, Petroleum Solutions had a duty to indemnify Titeflex "for *losses arising out of this products liability action*, to the extent Titeflex was not independently liable for those losses." *Ante* at ___ (emphasis added). That is simply not how we have construed the statute in *Hudiburg* or any of our other multiple-product cases. Consistent with our holding in *Hudiburg*, I would hold that Petroleum Solutions had a duty to indemnify Titeflex for losses related to allegations that the fuel system (Petroleum Solutions' finished product) was defective, but not for losses related to allegations that the flex connector (Titeflex's component product) was defective. Because Titeflex incurred all of its losses defending only against allegations that the flex connector was defective, the scope of Petroleum Solutions' duty to indemnify does not encompass those losses.

If there were any doubt about our holding in *Hudiburg* regarding the limited scope of the duty to indemnify in an action involving multiple allegedly defective products, this Court resolved that doubt in *Owens & Minor, Inc. v. Ansell Healthcare Products, Inc.*, 251 S.W.3d 481, 482 (Tex. 2008). In *Owens & Minor* we held that the statute "does not require a manufacturer to indemnify a distributor against claims involving products other manufacturers released into the stream of commerce." *Id.* at 482. We explained that, "while it is correct that the claimant's petition triggers each manufacturer's duty to indemnify an innocent seller under Section 82.002," it is the statute, and not the petition, that "define[s] the scope of that duty." *Id.* at 484. From the language of the statute, we concluded "it is unmistakable that the duty under Section 82.002 is premised on a nexus

10

between a given manufacturer and its product." *Id*. at 485. Thus, we explained, manufacturers "can be 'manufacturers' under Section 82.002 only with respect to their own products," because section 82.002 does not "require a manufacturer to indemnify a seller for *claims relating to products it did not produce*." *Id.* at 485 & n.2 (emphasis added).

Our construction of the statute in *Owens & Minor* relies on and confirms our holding in *Hudiburg* that the scope of the manufacturer's duty to indemnify in a multiple-products action is limited to a seller's losses that are related to the manufacturer's allegedly defective product. *Id.* at 485 n.2 (holding that section 82.002 does not "require a manufacturer to indemnify a seller *for claims relating to products it did not produce*") (emphasis added); *Hudiburg*, 199 S.W.3d at 261–62 (holding that "section 82.002 does not impose on a component-product manufacturer a duty to indemnify for *losses due to alleged defects unrelated to its component*") (emphasis added). As we explained when the *Owens & Minor* case came before us a second time, "[w]e held in *Owens & Minor* that manufacturers must indemnify and hold harmless an innocent seller *only for the portion of the defense* associated with [the manufacturers'] own products." *Ansell Healthcare Prods., Inc. v. Owens & Minor*, 251 S.W.3d 499, 500 (Tex. 2008) (emphasis added).

The Court concludes today that it is "improper" to apply our holding in *Owens & Minor* to the present case because *Owens & Minor* "involved a one-way duty to indemnify owed by multiple manufacturers to a non-manufacturing seller for its losses," while the present case involves "competing duties to indemnify owed to each other by a finished-product manufacturer and a component-product manufacturer." *Ante* at ___. But that is not what we said in *Owens & Minor*. To the contrary, in *Owens & Minor* we defended our reliance on *Hudiburg*'s discussion of the scope

11

of the duty to indemnify by rejecting the argument (which the Court itself makes today) that there is a substantive difference between the two types of multiple-product cases. "While this case does not involve the duty of a manufacturer of component parts," we explained, "the principle we applied in *Hudiburg* remains the same. There is no substantive difference between the position of the component-part manufacturer in *Hudiburg* and the position of [the product manufacturers] in this case." *Owens & Minor*, 251 S.W.3d at 485. "In both instances," we concluded, "it would be contrary to the Legislature's intent to require a defendant to indemnify a seller *for claims regarding products the defendant never manufactured*." *Id.* at 486 (emphasis added).

## III.
## Application

Applying these principles in the present case, I would hold that section 82.002 does not impose on Petroleum Solutions a duty to indemnify Titeflex for the fees and expenses that Titeflex incurred in this case, because Titeflex incurred all of its losses defending against allegations that Titeflex's own flex connector was defective, not allegations that Petroleum Solutions' fuel system was defective. Petroleum Solutions argues that Head's claims against Titeflex "complained only of Titeflex'[s] product, and did not seek damages from Titeflex *unrelated* to allegations of defects in Titeflex's component." I agree. When Petroleum Solutions joined Titeflex as a third-party defendant, it alleged only that *a defective flex connector* manufactured by Titeflex had caused the leak. When Head amended his petition to assert a claim directly against Titeflex, he alleged that "Titeflex manufactured the flex connector" and that "Titeflex is strictly liable for damages caused by the defective flex connector."

12

Here, as the majority notes, "because the fuel system is a product, Petroleum Solutions is the manufacturer of that product, and Titeflex is the innocent seller of a component part allegedly used in Petroleum Solutions' defective finished product," *ante* at ___, Petroleum Solutions has a statutory duty to indemnify Titeflex. But the majority ends its analysis there, instead of continuing on to address the question of whether the *scope* of Petroleum Solutions' duty encompasses Titeflex's losses. The Court overlooks our holdings in *Hudiburg* and in *Owens & Minor* regarding the scope of the duty to indemnify, and thus misses the effect of the fact that the losses for which Titeflex seeks indemnity all arise from allegations that Titeflex's component part, and not Petroleum Solutions' fuel system, was defective.

Under *Hudiburg* and *Owens & Minor*, the scope of the duty the statute imposed on Petroleum Solutions' to indemnify Titeflex did not extend to losses that Titeflex incurred as a result of claims that a *different product*—the flex connector that Titeflex manufactured—was defective. Titeflex was sued only for alleged defects in the flex connector, and I agree with Petroleum Solutions that, under our constructions of the statute in *Fitzgerald*, *Hudiburg*, and *Owens & Minor*, Petroleum Solutions could not be liable to indemnify Titeflex for losses relating to a product that Petroleum Solutions did not manufacture. I would hold that Petroleum Solutions must indemnify Titeflex "only for the portion of the defense associated with [Petroleum Solutions'] own products." *Ansell Healthcare Prods.*, 251 S.W.3d at 500.

Under this construction of section 82.002, Petroleum Solutions is a "manufacturer" under chapter 82 only with respect to the product it manufactured: the underground fuel system. *See id.* Petroleum Solutions did not design, formulate, construct, rebuild, fabricate, produce, compound,

13

process, or assemble the flex connector. Petroleum Solutions was a manufacturer with respect to the finished product but it was not a manufacturer with respect to the flex connector. *See id*. I agree that Petroleum Solutions would therefore have a duty to indemnify a seller like Titeflex against losses arising out of allegations that the finished product was defective, but the scope of its duty to indemnify Titeflex does not extend to losses arising out of the allegations that the flex connector itself was defective. *See id.*; *Owens & Minor*, 251 S.W.3d at 485–86. Titeflex therefore has no losses for which Petroleum Solutions owes a statutory duty to indemnify Titeflex.

## IV.
## Conclusion

Section 82.002 requires "[a] manufacturer" to indemnify "a seller" against losses arising out of "a products liability action," which means an action against "a manufacturer or seller" to recover damages allegedly caused by "a defective product." TEX. CIV. PRAC. & REM. CODE §§ 82.001(2), 82.002(a). The statute's silence on how this duty applies when a products liability action includes allegations that more than one product is defective presents several issues that are difficult to resolve. But we have already done our best to resolve them, relying on our observation that "it is unmistakable that the duty under Section 82.002 is premised on a nexus between a given manufacturer and its product." *Owens & Minor*, 251 S.W.3d at 485. We have thus held that, in multiple-products cases, the scope of each manufacturer's duty includes only those losses that a seller incurs related to the manufacturer's product, and does not include losses that another manufacturer incurs defending claims that its own product was defective. Because Titeflex seeks indemnity only for losses that it incurred defending claims that its own product was defective, I

14

disagree with the Court's holding that Petroleum Solutions' has a duty to indemnify Titeflex under section 82.002, and I dissent from that portion of the Court's judgment.

                                        _____

                                        Jeffrey S. Boyd
                                        Justice

Opinion delivered: July 11, 2014