OWENS & MINOR, INC. and Owens & Minor Medical, Inc., Appellants,

v.

ANSELL HEALTHCARE PRODUCTS, INC. and Becton, Dickinson and Company, Appellees.

No. 06-0322.

Supreme Court of Texas.

March 28, 2008.

Rehearing Denied May 30, 2008.

Michael Ray Walzel, Michael K. Rose, Stevens Baldo Freeman & Lighty, L.L.P., Beaumont TX, Robert F. Redmond Jr., William W. Belt Jr., Richmond VA, for Appellant.

Barry M. Epstein, Andrew W. Schwartz, Sills Cummis Epstein & Gross P.C., Newark NJ, Joseph R. Little, Shannon, Gracey, Ratliff & Miller, L.L.P., Houston, William C. Dowdy III, P. Michael Jung, Strasburger & Price, L.L.P., Dallas, Gene F. Creely II, Houston, Terry M. Hackett, R. Michael Duffy, Gardner, Carton & Douglas, LLP, Chicago IL, Mike A. Hatchell, Molly H. Hatchell, Susan A. Kidwell, Locke Lord Bissell & Liddell LLP, Austin TX, for Appellees.

Rafael Edward Cruz, Office of Atty. Gen., Austin TX, for person interested.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, and Justice BRISTER joined.

Section 82.002 of the Texas Civil Practice and Remedies Code entitles an innocent seller to seek indemnity for litigation costs from the manufacturer of a product alleged to be defective. The United States Court of Appeals for the Fifth Circuit certified to this Court the following question concerning the scope of the manufacturer's indemnity obligation under Section 82.002:

> When a distributor sued in a products liability action seeks indemnification from less than all of the manufacturers implicated in the case, does a manufacturer fulfill its obligation under Texas Civil Practice and Remedies § 82.002 by offering indemnification and defense for only the portion of the distributor's defense concerning the sale or alleged sale of that specific manufacturer's product, or must the manufacturer indemnify and defend the distributor against all claims and then seek contribution from the remaining manufacturers?

*Burden v. Johnson & Johnson Med.,* 447 F.3d 371, 375 (5th Cir.2006). In *Ansell Healthcare Products, Inc. v. Owens & Minor, Inc.,* the court of appeals concluded that the Section 82.002 indemnity duty is not fulfilled by a manufacturer's "offer to defend" only its own products. 189 S.W.3d 889, 896–98 (Tex.App.-Texarkana 2006, pet. filed). We disagree. Section 82.002 does not require a manufacturer to indemnify a distributor against claims involving products other manufacturers released into the stream of commerce. Therefore, a manufacturer that offers to defend or indemnify a distributor for claims relating only to the sale or alleged sale of that specific manufacturer's product fulfills its obligation under Section 82.002.

## I

Owens & Minor, Inc. and Owens & Minor Medical, Inc. (Owens, collectively) distributed latex gloves manufactured by other companies. In January 2000, Kathy Burden and members of her family filed a products liability action in Texas state court. The plaintiffs alleged that Burden had developed a Type I systemic allergy from defective latex gloves manufactured and sold by Owens, Ansell Healthcare Products, Inc., Becton, Dickinson and Company, and more than thirty other manufacturers and sellers of latex gloves. It is undisputed that Owens was an innocent seller in the chain of distribution of these products and that Ansell and Becton manufacture latex gloves.

Owens rejected offers of defense and indemnity from both Ansell and Becton and chose instead to hire outside counsel. In March 2000, Owens requested that Ansell, Becton, and eleven other latex glove manufacturers defend it pursuant to Section 82.002 of the Texas Civil Practice and Remedies Code. Ansell responded with an offer to defend Owens. The offer limited Ansell's defense to gloves it manufactured, and Owens rejected it. Becton had made a similar offer to defend Owens in a latex glove case in July 1995. The offer said that Becton would "defend, indemnify and hold harmless" Owens against claims involving gloves it manufactured until it was determined that the plaintiff was not exposed to its gloves. Owens likewise declined Becton's offer. Four years later, Becton made a second offer to "defend and indemnify" Owens in all latex glove cases on the same terms as the original offer. But Owens again rejected Becton's offer.

On May 3, 2000, the underlying case was removed to the United States District Court for the Southern District of Texas, which transferred the case to the United States District Court for the Eastern Dis-

trict of Pennsylvania as part of a broader multi-district litigation process. Because the plaintiffs were unable to show that Owens sold any of the latex gloves that allegedly injured Burden, they nonsuited their claims against Owens. The case was then returned to the original federal district court in Texas, and thereafter the plaintiffs voluntarily dismissed the case against all defendants for the same or similar reasons. No court found any party acted negligently or caused Burden's alleged injuries. Owens filed cross-claims for indemnity against Ansell, Becton, Johnson & Johnson Medical, Inc., and Smith & Nephew, Inc. Owens eventually settled with Johnson & Johnson and Smith & Newphew, but it did not settle with Ansell or Becton. Ansell and Becton moved for summary judgment on the adequacy of their offers to defend and indemnify Owens. The district court granted the motion and terminated the case, holding that Ansell and Becton had satisfied the Section 82.002 requirements when they offered to defend Owens against all claims involving their own products. *Burden v. Johnson & Johnson Med., Inc.*, 332 F.Supp.2d 1023, 1029 (S.D.Tex.2004). Owens appealed to the United States Court of Appeals for the Fifth Circuit, which in turn certified to this Court the question before us. *Burden*, 447 F.3d at 375.

## Analysis

■■■ Our focus when construing a statute is the intent of the Legislature. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex.1995). To give effect to the Legislature's intent, we rely on "the plain and common meaning of the statute's words." *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). "[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex.1999).

■■■ At common law, a seller was not entitled to indemnification from a manufacturer unless and until there was a judicial finding of negligence on the part of the manufacturer. *Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex.1990). In 1993, the Texas Legislature supplemented the common law by enacting Section 82.002,[1] which allows an

---

1. Section 82.002 provides:
   (a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.
   (b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.
   (c) Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.
   (d) For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.
   (e) The duty to indemnify under this section:
      (1) applies without regard to the manner in which the action is concluded; and
      (2) is in addition to any duty to indemnify established by law, contract, or otherwise.
   (f) A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.
   (g) A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.
   TEX. CIV. PRAC. & REM.CODE § 82.002.

innocent seller to seek indemnification from the manufacturer of an allegedly defective product. Act of Feb. 23, 1993, 73d Leg., R. S., ch. 5, § 1, 1993 Tex. Gen. Laws 13, 13; TEX. CIV. PRAC. & REM.CODE § 82.002(a); *see also Fitzgerald*, 996 S.W.2d at 866 ("The duty [to indemnify] is a new, distinct statutory duty...."). Thus, under Section 82.002, the manufacturer is now liable to the seller regardless of how the injury action is resolved. § 82.002(e)(1). The manufacturer's duty begins when it is given notice that a seller has been sued. *See Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex. 2001) (stating that the plaintiff's pleadings are sufficient to invoke the manufacturer's duty under Section 82.002).

Owens argues that Section 82.002 requires manufacturers to indemnify and hold harmless innocent sellers from all losses arising out of a products liability action. Owens thus contends that it may impose liability upon any manufacturer for Owens's costs in defending a products liability action, even one that did not make the product. Owens argues that once this indemnity liability is placed on a manufacturer, it then falls to the manufacturer to seek contribution from other responsible parties. Ansell and Becton, on the other hand, contend that Section 82.002 requires a manufacturer to indemnify a seller only for claims related to the sale of that manufacturer's product.

Owens points to our decisions in *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, and *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, as supporting its position that a manufacturer's Section 82.002 obligation is not limited to defense or indemnification costs with respect to its own products alone. In *Fitzgerald*, the issue was whether manufacturers owe indemnification under Section 82.002 to sellers who are not in the chain of distribution. 996 S.W.2d at 865.

We held that the statute requires manufacturers to indemnify a seller even if the seller did not sell the manufacturer's product. *Id.* at 869. In *Meritor*, we again refused to limit the indemnity obligation by holding that Section 82.002(a)'s exception to a manufacturer's general indemnity obligation is established only by a finding that a seller's independent conduct caused the plaintiff's injury. 44 S.W.3d at 88–91. Until such a finding is made, a mere allegation of negligence in the plaintiff's pleadings is sufficient to invoke the manufacturer's duty to indemnify the seller for all theories properly joined to a products liability claim. *Id.*

But our holdings in *Fitzgerald* and *Meritor* do little to support Owens's interpretation of Section 82.002. First, whereas *Fitzgerald* involved the issue of to whom a manufacturer owes indemnification, 996 S.W.2d at 865, this case concerns the scope of that duty of indemnification. Second, we held in *Meritor* that "the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant." 44 S.W.3d at 91; *see also Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex. 2006) ("The duty to indemnify is triggered by the injured claimant's pleadings."). Citing *Meritor*, Owens argues that the plaintiffs' broad, industry-wide allegations in their pleadings triggered an independent duty of indemnification by each of the companies that manufacture the latex gloves sold by Owens. But, while it is correct that the claimant's petition triggers each manufacturer's duty to indemnify an innocent seller under Section 82.002, the petition does not define the scope of that duty. Rather, to determine the scope of the duty, we must turn to the text of the statute itself.

The essence of Owens's argument is that, because Section 82.002(a) requires a manufacturer to hold an innocent seller

"harmless," Ansell's and Becton's respective offers to defend and indemnify Owens only for claims against products each released into the stream of commerce did not go far enough. Instead, Owens contends that a manufacturer must indemnify a seller for all costs related to the entire products liability action. The only exception listed in the statute, Owens points out, is for "any loss caused by the seller's negligence, intentional misconduct, or other act or omission" resulting in the seller's independent liability. Owens correctly recognizes that the lone exception does not apply to this case.

But it is unmistakable that the duty under Section 82.002 is premised on a nexus between a given manufacturer and its product. This nexus is inherent in the statute that requires a "manufacturer" to hold a seller harmless against loss arising out of a products liability action. TEX. CIV. PRAC. & REM.CODE § 82.002(a). Section 82.001(4) defines the term "manufacturer" for purposes of chapter 82 as "a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component thereof in the stream of commerce." *Id.* § 82.001(4). Thus, Ansell and Becton can be "manufacturers" under Section 82.002 only with respect to their own products.[2]

On at least two prior occasions, we have implied that requiring a manufacturer to defend or indemnify a seller against claims related to the products of its competitors

is an absurd result that cannot have been the intent of the Legislature. First, we touched on this issue in *Fitzgerald* when responding to the dissent:

> The dissenting opinion contends that a literal reading of the statute would permit a seller to obtain indemnity from "every other manufacturer sued," not just the manufacturer whose product the seller sold. Our construction of the plain language of section 82.002(a) must avoid absurd results if the language will allow.

996 S.W.2d at 867. However, because the plaintiff in *Fitzgerald* did not sue multiple manufacturers, the Court did not reach the issue. *Id.* at 865, 867. Second, *Hudiburg* concerned the statutory duty of a component-part manufacturer to indemnify a seller. 199 S.W.3d at 253–54. In our decision construing the manufacturer's duty to indemnify under Section 82.002, we stated that "the claimant's pleadings must fairly allege a defect in the component itself, not merely a defect in the seller's product of which the component was part." *Id.* at 257. While this case does not involve the duty of a manufacturer of component parts, the principle we applied in *Hudiburg* remains the same. There is no substantive difference between the position of the component-part manufacturer in *Hudiburg* and the position of Ansell and Becton in this case. In either case, the pleadings must properly allege that the named defendant is a manufacturer of the product under the statutory definition to establish a nexus between the defendant manufac-

---

2. The plaintiffs in this case alleged that Ms. Burden's allergic reaction was caused by the latex protein inherent in all rubber latex gloves, but the manufacturers argued during discovery that not all latex gloves contain equal amounts of latex protein. Owens contends that the plaintiffs' petition merely alleged that latex gloves are defective and did not segregate any manufacturer's product from any other, but it does not deny that

different manufacturers produce gloves containing different amounts of latex protein. However, regardless of whether one manufacturer's gloves are distinguishable from the gloves of another, for the reasons stated herein, we do not construe Section 82.002 to require a manufacturer to indemnify a seller for claims relating to products it did not produce.

turer and the product, and thus trigger the protection of the statute. In both instances, it would be contrary to the Legislature's intent to require a defendant to indemnify a seller for claims regarding products the defendant never manufactured.

At common law, the manufacturer was required to indemnify the seller only for claims involving defects in its own products. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 cmt. c, illus. 1 (2000) (stating that, where no contractual indemnity exists, the seller of a defective product is not entitled to indemnity from the manufacturer if the seller is unable to prove that the manufacturer placed the defective product into the stream of commerce and therefore would itself have been liable to the injured third party). The rationale behind the common law concept of indemnification is that a party exposed to liability solely due to the wrongful act of another should be permitted to recover from the wrongdoer. In other words, the theory is that "[e]veryone is deemed responsible for the consequences of his or her own acts." *Muldowney v. Weatherking Prods., Inc.*, 509 A.2d 441, 443 (R.I.1986). Accordingly, a wide array of courts have held that, absent statutory language or an indemnification contract to the contrary, an innocent seller can recover its attorney's fees under the common law from a manufacturer only if the manufacturer "was or would have been liable in the products liability suit." [3]

While these cases dealt specifically with the manufacturer's liability for attorney's fees incurred by the supplier in defending claims involving the manufacturer's products, the concept is equally applicable to other fees and costs incurred by the seller in defending such claims. Thus, courts have concluded that the manufacturer is liable for the supplier's legal expenses in defending strict liability and negligence claims only when the supplier occupied a place in the stream of commerce between the manufacturer and the injured third party. *See, e.g., Palmer v. Hobart Corp.*, 849 S.W.2d 135, 144 (Mo.Ct.App.1993) (citing *Hanover Ltd.*, 758 P.2d at 447). In this case, however, Owens asserts a right to indemnity under Section 82.002 from Ansell and Becton for liability it incurred as a result of its place in the stream of commerce between *other* manufacturers and the injured third party.

In the absence of language indicating that the Legislature intended for one manufacturer to hold an innocent seller harmless for losses caused by products made by another manufacturer, we decline to assign such broad liability. Doing so would lead to absurdities and inequities the Legislature certainly did not intend. *See C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 322 n. 5 (Tex.1994) ("Statutory provisions will not be so construed or interpreted as to lead to absurd conclusions ... if the provision is subject to another, more reasonable construction or interpretation."). For example, Owens's

**3.** 1 Robert L. Rossi, *Attorney's Fees* § 8:4 (3d ed. & Supp.2006) (citing *Safway Rental & Sales Co. v. Albina Engine & Mach. Works, Inc.*, 343 F.2d 129 (10th Cir.1965); *Merck & Co. v. Knox Glass, Inc.*, 328 F.Supp. 374, 376–78 (E.D.Pa.1971); *D.G. Shelter Prods. Co. v. Moduline Indus., Inc.*, 684 P.2d 839, 841 (Alaska 1984); *Trails Trucking, Inc. v. Bendix–Westinghouse Auto. Air Brake Co.*, 32 Cal. App.3d 519, 108 Cal.Rptr. 30, 34 (1973); *Maple Chair Co. v. W.S. Badcock Corp.*, 385 So.2d 1036, 1038 (Fla.Dist.Ct.App.1980); *Rauch v.*

*Senecal*, 253 Iowa 487, 112 N.W.2d 886, 888 (Iowa 1962); *Cent. Motor Parts Corp. v. E.I. duPont de Nemours & Co.*, 251 N.J.Super. 5, 596 A.2d 759, 761–62 (1991); *Krasny–Kaplan Corp. v. Flo–Tork, Inc.*, 66 Ohio St.3d 75, 609 N.E.2d 152, 154 (1993); *Kamyr, Inc. v. Boise Cascade Corp.*, 268 Or. 130, 519 P.2d 1031, 1032–34 (1974); *Hanover Ltd. v. Cessna Aircraft Co.*, 758 P.2d 443, 448 (Utah Ct.App. 1988); Thomas Malia, Annotation, *Attorneys Fees in Products Liability*, 53 A.L.R.4th 414 § 19 (1987)).

interpretation of the scope of Section 82.002's duty to indemnify could result in manufacturers such as Ansell and Becton being placed in the awkward, if not impossible, position of defending someone else for injuries caused by products they did not make. It is one thing to have to defend a seller who has marketed your product and whose defense would therefore mirror your own. But it is quite another to have to defend a seller who marketed your competitors' products rather than your own, and on top of that try to defend that seller against allegations that your competitors' products were defective in manufacture or marketing. While the seller's interest might be served in either case, it is clearly not in the competing manufacturer's interest that one of its rivals is handed the task of defending its product. It is highly unlikely, for example, that a competing manufacturer would be willing to share its intellectual property with the indemnifying manufacturer, but absent that discovery, the defense of the seller might be problematic. Moreover, a manufacturer's ability to insure its indemnity obligation would be extremely impaired if its potential exposure was linked to some other manufacturer's product. For these reasons, a manufacturer's indemnity obligation only makes sense when its own product is implicated. While we acknowledged in *Fitzgerald* that Section 82.002 gives preference to innocent sellers, we also noted that it was designed to protect manufacturers. 996 S.W.2d at 868–69. It protects manufacturers by "establishing uniform rules of liability" so they can "make informed business decisions," such as gauging exposure to liability and obtaining liability insurance. *Id.*

In 1967, our decision in *McKisson v. Sales Affiliates, Inc.* established a party's strict liability for manufacturing or selling any type of defective product. 416 S.W.2d 787, 789 (Tex.1967). As Owens points out, Section 82.002 was designed to remedy the fundamental unfairness inherent in a scheme that holds an innocent seller liable for defective products manufactured by another by requiring the manufacturer to indemnify the seller unless the seller is independently liable for negligence, intentional misconduct, or any other act or omission. TEX. CIV. PRAC. & REM.CODE § 82.002(a). Yet Owens argues that limiting the manufacturer's obligation under Section 82.002(a) to products the manufacturer placed in the stream of commerce returns the seller to an unfair position by requiring it to defend claims relating to another company's products if that company refuses to provide a defense. In this sense, Owens contends, an innocent seller may be left in the same disadvantaged position Ansell and Becton seek to avoid (i.e., defending a product it did not manufacture). Because we recognized in *Fitzgerald* that Section 82.002 was designed to protect innocent sellers above all, *see* 996 S.W.2d at 869, Owens argues its formulation of Section 82.002 should prevail.

But Owens's argument is unconvincing for three reasons. First, the Legislature's intent that an innocent seller be held harmless is satisfied under Ansell's and Becton's construction of Section 82.002 because a manufacturer would either defend against claims relating to its own products or would later indemnify the seller. § 82.002(a). To invoke the manufacturer's obligation under Section 82.002(a), the seller must pursue its rights under the statute from each manufacturer by giving "reasonable notice to the manufacturer." *Id.* § 82.002(f). Should the seller be faced with a recalcitrant manufacturer, it is entitled to recover its costs incurred enforcing its indemnity rights. *Id.* § 82.002(g).[4]

---

4. The dissent claims that in cases such as this, where no determination was made as to which product was at fault, the Legislature

Second, in the event a seller ends up defending a manufacturer's products itself and thereafter seeks indemnity from the manufacturer, the seller's position is more favorable than that of the manufacturer forced to defend products produced by a competing manufacturer. In the former scenario, the seller, by virtue of its intermediary position in the stream of commerce, has a business relationship with the manufacturer of the product it sells. It stands to reason that such a pre-existing business relationship is more likely to facilitate the sharing of proprietary information that is necessary for a thorough products liability defense. Finally, we find useful the Utah Supreme Court's analysis in deciding an indemnification case involving two innocent parties. In *Bettilyon Construction Co. v. State Road Commission*, a road contractor sued the State Road Commission of Utah to recover legal expenses the contractor had incurred in connection with its successful defense of a lawsuit brought against it by a property owner whose land abutted a road construction project. 20 Utah 2d 319, 437 P.2d 449, 449–50 (1968). To facilitate the project, the road commission had leased a right of way to the contractor. *Id.* at 449. The property owner alleged the right of way encroached on his property. *Id.* In

holding that the contractor was not entitled to common law or contractual indemnity from the road commission for its legal expenses, the Utah Supreme Court reasoned:

> One of the hazards of life which everyone is exposed to is the possibility of being required to defend a lawsuit.... But the fact that the party charged may be innocent of the claimed wrong and can successfully defend against such a suit does not entitle him to pass the burden on the [sic] some equally innocent third party.

*Id.* at 450. Here, as well, there is no basis for extending Ansell's and Becton's obligations under Section 82.002 to claims involving another manufacturer's products.

Owens argues that interpreting Section 82.002 in this manner reverts to the common law by reinserting a "chain of distribution" requirement. But we conclude that the Legislature never altered this portion of the common law.[5] The Legislature specifically incorporated that requirement into the statute by defining a manufacturer as a person who "places the product or any component part thereof in the stream of commerce." TEX. CIV. PRAC. & REM.CODE § 82.001(4). If the Legislature intended to change the common law by establishing liability for another manufacturer's product, it would have done so expressly.[6]

---

intended for the manufacturers, not the seller, to bear the burden of determining how the parties should distribute the costs of providing the seller with indemnity. 251 S.W.3d at 492. But Section 82.002(g) specifically entitles the seller to recover costs incurred in enforcing his indemnity rights. If, as the dissent maintains, the burden should fall to a manufacturer to seek contribution from other manufacturers, then Section 82.002(g) would have provided that manufacturers as well as sellers could recover such costs.

5. The dissent suggests that today's holding results in the Court reading the phrase "plac[es][the] product ... in the stream of commerce" differently in the definitions of manufacturer and seller. 251 S.W.3d at 494.

In *Fitzgerald*, we held that Section 82.002 does not require a seller to be proven to have been in the chain of distribution for the product at issue. 996 S.W.2d at 867. But the question in this case is not whether the seller stood in the chain of distribution. Instead, our decision in this case concerns only the legal question of whether a manufacturer's defense or indemnity obligation in Section 82.002 extends beyond its own products.

6. The dissent asserts that our holding "creates an exception to the indemnity obligation that does not exist in the text." 251 S.W.3d at 495. We disagree. We merely recognize the scope of indemnity obligation imposed by the Legislature. Under the statute, an innocent seller is guaranteed indemnity from any per-

## Conclusion

The Fifth Circuit asks whether a manufacturer can fulfill its indemnity obligations under Section 82.002 when the manufacturer offered to indemnify and defend an innocent seller only for claims related to the sale of products the manufacturer released into the stream of commerce. We conclude that the statute does not extend a manufacturer's obligations under Section 82.002 to claims related to the sale of other manufacturers' products. When an innocent seller is forced to defend itself in a products liability action, its remedy under the statute is to seek indemnity from the product manufacturer. But where the plaintiff has sued multiple manufacturers, the statute does not authorize a seller to simply select one or more manufacturers and thereby obligate the chosen manufacturers to fully indemnify the seller's costs regardless of whether any connection to the product at issue exists. Rather, the product manufacturers satisfy their statutory duty to the seller by offering to indemnify and defend it only for any costs associated with their own products. And if, as in this case, there is no finding as to which manufacturer, if any, is liable for the plaintiff's injury, the innocent seller, like an innocent manufacturer, must assume responsibility for recovering the costs of its own defense. Our interpretation of the scope of a manufacturer's obligation under Section 82.002 comports with the Legislature's intent, as indicated by the plain language of the statute, the policy behind

it, and its practical application. Accordingly, Ansell and Becton are not required to indemnify and defend Owens against all claims relating to all products.

Justice BRISTER filed a concurring opinion.

Justice O'NEILL filed a dissenting opinion, in which Justice MEDINA, Justice JOHNSON, and Justice WILLETT joined.

Justice BRISTER, concurring.

The two opinions here appear to be ships passing in the night—each assuming the other means something it does not actually say. I write separately to indicate what I believe is common ground.

First, the dissent is correct that statutory indemnity is triggered by a plaintiff's pleadings, not actual proof. We recently said as much in a unanimous opinion,[1] and the Court says so explicitly again today.[2] Thus, a retailer is not required to *prove* that a defendant's product caused the plaintiff's injury (and thus its own defense costs), only that a plaintiff's *allegation* about the defendant's product did so. It is unclear why the dissent thinks this is an "impossible burden."

Second, I agree with the Court that a manufacturer's statutory duty of indemnity is limited to its own products. A nexus between the plaintiff's pleadings and the defendant's product is required not due to common law, but to common sense. Noth-

son who qualifies as a manufacturer under Section 82.001(4). Naming a party as a manufacturer in a lawsuit does not automatically trigger an unlimited indemnity obligation under Section 82.002. A party's indemnity obligation is limited by the definition of manufacturer, which relates specifically to a person's own products that have been placed in the stream of commerce.

1. *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex.2006) ("The

duty to indemnify is triggered by the injured claimant's pleadings.").

2. 251 S.W.3d at 485–86 ("[T]he pleadings must properly allege that the named defendant is a manufacturer of the product under the statutory definition to establish a nexus between the defendant manufacturer and the product, and thus trigger the protection of the statute.").

ing in the statute suggests a retailer can get indemnity from A and B for costs incurred in defending products made by X, Y, and Z; as we recently noted in *Hudiburg,* a truck seller cannot claim indemnity from a hubcap manufacturer if nothing in the pleadings suggests the hubcaps were defective. Only one conclusion can follow from this: defendants defend their own products, not somebody else's. If the dissent truly believes that no nexus is necessary, nothing would prevent the retailer here from suing General Motors or Gucci for indemnity. Of course, the plaintiff never alleged Gucci made the latex gloves she used, but a plaintiff's pleadings need not name a particular manufacturer for indemnity to follow.[3]

Burden's pleadings here were industry-wide and very general, but they cannot be fairly read to allege that Ansell or Becton made any latex gloves except their own. Making them provide indemnity for other gloves would make them indemnify a claim the plaintiff never made. That is beyond what the statute requires.[4]

The retailer here admits as much in its brief, conceding that if Burden dropped her claims against Ansell and Becton, then they would have no duty to defend Owens & Minor any longer.[5] The same would be true when a manufacturer is dismissed on special exceptions or summary judgment—if the plaintiff no longer has a pending claim against a product, its manufacturer cannot be liable for any further indemnity.

We did not hold in *Meritor* that manufacturers must indemnify retailers regardless of the circumstances or the pleadings.[6] Although we held manufacturers must cover defense costs relating to a retailer's own negligence, that was because statutory indemnity covers "loss *arising* out of a products liability action" and excludes only "loss *caused* by the seller's negligence."[7] A claim based on a retailer's independent culpability *arises* in a plaintiff's pleadings but does not *cause* loss until there is a judgment to that effect.[8] By contrast, no claim that Ansell and Becton made gloves for other manufacturers ever arose in this case.

The dissent is also correct that the statute gives innocent retailers broad protection, and the Court's opinion could spell out more clearly why that will still be the case. As we recently noted in *Tony Gullo Motors v. Chapa,* when a case involves multiple claims, "many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other":

> Many of the services involved in preparing [one] claim for trial must still be incurred if [other] claims are appended to it; adding the latter claims does not render the former services unrecoverable. Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, voir dire of the jury, and a host of other services may be necessary

---

**3.** *Hudiburg Chevrolet,* 199 S.W.3d at 257 ("'[W]e do not agree with Rawson–Koenig that a claimant's pleadings must actually name a manufacturer to invoke a right of indemnity under section 82.002.'").

**4.** *See id.* ("It is one thing to give a seller indemnity for defending unproved claims that a product is defective; it would be quite another to give a seller indemnity for defending unproved claims that were never even made.").

**5.** "Had plaintiff Burden amended her Petition to delete product claims against Ansell or [Becton], then [they] would have no duty to defend Owens & Minor."

**6.** *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86 (Tex.2001).

**7.** TEX. CIV. PRAC. & REM.CODE § 82.002(a) (emphasis added).

**8.** *Meritor Auto.,* 44 S.W.3d at 91.

whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.[9]

Here, no one disputes that if Burden had alleged injuries solely from Ansell's gloves, it would have been responsible for 100 per cent indemnity. Nothing in the statute suggests this responsibility dropped to 50 per cent when Burden added another manufacturer; Ansell still had to pay for sending and responding to standard disclosures, producing documents, deposing the plaintiff, and attending MDL hearings in Pennsylvania. In most toxic tort cases, the costs incurred *solely* because of an added defendant are marginal, and it is those alone that Ansell would not have to pay.

Thus, I disagree with the dissent that the Court's opinion places "an impossible burden" on innocent retailers; they are still entitled to every dime incurred as if the manufacturer from whom they seek indemnity had been the only one sued— which in most cases will be most of the dimes. If several manufacturers have become insolvent (as appears to be the case here), an innocent retailer is not required to squeeze indemnity from those turnips; rational litigants rarely spend much money pursuing penniless defendants, so an innocent retailer can still recover almost all its costs from the manufacturers the plaintiff actually pursues. And as Burden's pleadings against Ansell and Becton remained viable until she nonsuited her case, their duty to indemnify continued until that date.

I disagree with Becton's argument that the statute requires an innocent retailer to pursue indemnity from each and every manufacturer, rather than picking one or a few. The statute says nothing about how many manufacturers a retailer must sue for indemnity, or about limiting indemnity pro rata. When legal work has to be done whether there are 1 or 100 defendants, the one manufacturer from whom they are sought can hardly claim most of the work was not reasonable, necessary, and due under the indemnity statute. I share Becton's concern that an innocent retailer might arbitrarily saddle a disfavored manufacturer with all indemnity costs, and that the dissent may (or may not) be mistaken in assuming one manufacturer can get contribution from others. But today's decision provides a disincentive to such favoritism: if a retailer seeks indemnity from *less than all* manufacturers, it will be entitled to *less than all* its costs.

In closing, I would also mention that none of this is how the statute was intended to work. The whole idea was that innocent retailers would not be sued *at all* in products cases, as the Legislature made clear in its 2003 amendments.[10] That goal is not advanced by encouraging manufacturers to refuse indemnity except for some pro rata part of the case (as the dissent fears), or to hire duplicative attorneys for the retailer (as the dissent advocates). As we have said many times in other mass-tort contexts, the best plan is to decide early on which defendants are really involved, and discharge those that are not. As I believe the Court's opinion today moves in that direction, I join in it.

Justice O'NEILL, joined by Justice MEDINA, Justice JOHNSON, and Justice WILLETT, dissenting.

A manufacturer of a product alleged in a pleading to be defective is required to

---

**9.** 212 S.W.3d 299, 313 (Tex.2006).

**10.** *See* TEX. CIV. PRAC. & REM.CODE § 82.003; Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 5.02, 2003 Tex. Gen. Laws 847, 860 (eff. Sept.1, 2003).

indemnify and hold harmless an innocent seller against loss arising out of a products liability action, regardless of how the action is concluded. TEX. CIV. PRAC. & REM. CODE § 82.002. We have said that the manufacturer's indemnity duty is invoked not by proof but by the plaintiff's pleadings, *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.,* 199 S.W.3d 249, 252 (Tex.2006); *see Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 867 (Tex.1999), and that it encompasses all allegations against the seller that relate to a plaintiff's injury, *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 89 (Tex.2001). Section 82.002's clear purpose is to expand the common law indemnity rights of innocent sellers like the one here, who merely passed along sealed packages from the factory. Yet the Court restricts the statutory indemnity obligation to defense costs the seller can link to a particular manufacturer's product. That is an impossible burden in this case, as the underlying action was nonsuited without a determination of whose product, if any, actually caused injury. As a result, the innocent seller's inability to attribute costs to a particular manufacturer leaves it without recompense, defeating the very protection the statute was meant to confer. The statutory text and our interpretive caselaw demonstrate that the Legislature intended a far broader protection for innocent product suppliers than that which the Court affords today. In my view, the statute obligated the manufacturers here to indemnify or defend the innocent seller against all claims the plaintiff alleged, for which they could then seek contribution from the remaining manufacturers. Because the Court holds otherwise, I respectfully dissent.

## I. Background

Kathy Burden, a dental hygienist, filed a products liability action alleging that she developed a latex allergy from defective latex gloves. The respondents here were among the more than thirty defendants named in Burden's suit. Owens & Minor, Inc. and Owens & Minor Medical, Inc. (collectively "Owens & Minor") were sued as distributors of latex gloves, and Ansell Healthcare Products, Inc. and Becton Dickinson & Co. were sued as manufacturers. Owens & Minor sent letters to several of the defendant manufacturers, including Ansell and Becton, requesting that they indemnify Owens & Minor for all litigation expenses as required under Texas Civil Practice and Remedies Code section 82.002. When Ansell responded by offering to defend claims related only to its own products, Owens & Minor refused the offer. Becton did not respond to Owens & Minor's letter, relying on its position in earlier latex-glove litigation that in future proceedings it would only agree to defend Owens & Minor for claims related to its own products. Owens & Minor thus retained its own counsel to defend the products liability suit.

The case was removed to federal court and consolidated as part of multidistrict latex-glove litigation in Pennsylvania. Owens & Minor brought cross-claims for indemnity against several of the manufacturers, including Ansell and Becton. The plaintiff, unable to show that Owens & Minor sold any of the injury-causing latex gloves, nonsuited her claims against Owens & Minor. She subsequently dismissed her case against all the remaining defendants for the same or similar reasons. Thus, the products liability suit ended without a finding that any party was negligent or that any particular product caused the plaintiff's injuries. Owens & Minor settled its indemnity suit against all solvent manufacturers except Ansell and Becton. The federal district court granted summary judgment in Ansell's and Becton's favor, reasoning that they had satisfied section 82.002 by offering to defend

their own products. *Burden v. Johnson & Johnson Med., Inc.*, 332 F.Supp.2d 1023, 1029 (S.D.Tex.2004). Owens appealed to the Fifth Circuit, which certified the question to us.

## II. Common Law Indemnity and Section 82.002

Under Texas law, sellers of defective products may be held strictly liable for resulting injuries. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334–35 (Tex.1998) (citing *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–89 (Tex.1967)). Sellers are therefore often named as defendants in products liability suits regardless of any allegation of wrongdoing. As a result, undisputedly innocent sellers frequently must dedicate tremendous resources to defending allegedly defective products they did not manufacture or alter but merely passed on to consumers. *See* Jeffrey Nolan Diamant, Comment, *Texas Senate Bill 4: Product Liability Legislation Analyzed*, 31 Hous. L.Rev. 921, 930 (1994).

Under the common law, sellers were only entitled to indemnification from the manufacturer for damages if the manufacturer was found to be liable. *See Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex.1990). Indemnification for other litigation expenses was unavailable altogether. *See Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179, 180 (Tex.1988). Thus, when neither the seller nor the manufacturer was found liable, the seller bore the heavy cost of its defense of the product. In addition to the requirement that the manufacturer be found liable, a seller's liability must only have been vicarious, *B & B Auto Supply, Sand Pit & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex.1980), that is, the seller must not have been independently liable based on its own conduct, *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432

(Tex.1984), and the seller must have been in the chain of distribution, *id.*

In 1993, the Legislature sought to remedy the unfairness to innocent product sellers by enacting section 82.002 of the Texas Civil Practice and Remedies Code. This statute completely changed the common law manufacturer-seller indemnification scheme by shifting the burden of the seller's litigation costs onto the manufacturer. *See* TEX. CIV. PRAC. & REM.CODE § 82.002. Now, when neither the seller nor the manufacturer is found liable, the manufacturer must "indemnify and hold harmless" the seller for all of its litigation expenses, including attorney's fees. *Id.* § 82.002(a), (b). As under the common law, the statute explicitly provides that the seller loses its right to indemnification if it is found independently liable. *Id.* § 82.002(a). However, unlike the common law, the statute requires that the manufacturer indemnify the seller for all litigation expenses "without regard to the manner in which the action is concluded." *Id.* § 82.002(e)(1). We recognized in *Fitzgerald* that section 82.002 is intended to protect both sellers and product manufacturers, "[f]irst, [by] ensur[ing] that the relatively small seller need not fear litigation involving problems that are really not in its control," and "[s]econd, [by] establish[ing] uniform rules of liability so that manufacturers could make informed business decisions and plaintiffs could understand their rights." *Fitzgerald*, 996 S.W.2d at 868–69. In easing the requirements for indemnification, the Legislature "gave preference to sellers with no independent liability." *Id.* at 869.

## III. Interpreting Section 82.002

In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). We first look to the statute's

language. TEX. GOV'T CODE § 311.011(a); *Allen*, 15 S.W.3d at 527. Indeed, we consider it "a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald*, 996 S.W.2d at 866. If the statute's language is unambiguous, its plain meaning will prevail. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003). Section 82.002, in its entirety, provides:

(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

(b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

(c) Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.

(d) For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.

(e) The duty to indemnify under this section:

(1) applies without regard to the manner in which the action is concluded; and

(2) is in addition to any duty to indemnify established by law, contract, or otherwise.

(f) A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.

(g) A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.

TEX. CIV. PRAC. & REM.CODE § 82.002.

Section 82.001 defines the term "products liability action" as "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." *Id.* § 82.001(2). The term "seller" is defined as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." *Id.* § 82.001(3). The statute broadly defines a "manufacturer" as "a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce." *Id.* § 82.001(4).

The statute's import is straightforward and unmistakable: unless the seller is found to be negligent, the manufacturer must "indemnify and hold harmless" the seller for any reasonable expenses resulting from products liability litigation "without regard to the manner in which the action is concluded." *Id.* § 82.002(a), (e)(1). The extent of the indemnity—sellers are to be indemnified regardless of the outcome of the underlying lawsuit—indicates how broadly the Legislature intended it to apply. *Id.* § 82.002(e), (g). The

Court's conclusion that a manufacturer must only indemnify a seller for that portion of its defense costs related to the manufacturer's particular product contravenes the statute's language and creates an exception to the indemnity obligation that does not exist in the text.

The Court's holding also undermines the law's fundamental purpose, leaving many innocent sellers exposed to damages and expenses incurred in defending a product without recourse. *See id.* § 82.002(a). Under the Court's construct, a seller *might* enjoy complete indemnity if every manufacturer named in the suit agreed to defend or indemnify for the defense of its own product. But many products liability actions, like the one here, involve multiple manufacturers, and the litigation is often resolved without a determination of whose product reached the plaintiff or caused the injury. After today, the innocent seller in such a situation who is unable to attribute its costs to a particular manufacturer must shoulder the burden of the cost of defending the manufacturer's products, contrary to the statute's purpose.

The Court posits that if the Legislature had intended manufacturers to bear the burden of determining how the seller's litigation costs should be distributed among the manufacturers, the Legislature would have provided that manufacturers, as well as sellers, be indemnified for litigation expenses incurred in seeking contribution. 251 S.W.3d at 487–88, n. 4. However, indemnification, which is the right provided to the seller in section 82.002, and contribution, which may be available to the manufacturers, are two distinct concepts with varying purposes; indemnity operates to completely shift the burden of loss from one, usually innocent, party to another, while contribution involves apportionment of a burden among a class of liable parties. *See* 6 Texas Torts & Remedies, Contribution & Indemnity § 102.01(MB) (2007).

Here, the Legislature intended that the innocent seller be held completely harmless for any loss and therefore provided the seller with indemnity and compensation for expenses securing that indemnity. TEX. CIV. PRAC. & REM.CODE § 82.002(a), (g). In contrast, the Legislature deliberately burdened the manufacturers with the expense of litigation and made no distinction between different manufacturers' levels of liability. Under the statutory scheme, the manufacturers are collectively, not individually, responsible for the seller's losses. Contribution, the only avenue available to the manufacturers against each other, is fundamentally about sharing the burden, not shifting the burden. Thus, it is logical that the Legislature chose to award litigation expenses in the case of indemnity, but not for contribution.

The Court bases its conclusion that a manufacturer's indemnity obligation extends only to its own products on section 82.001(4), which defines a "manufacturer" as "a person who is a [maker] of any product or any component part thereof and *who places the product or any component part thereof in the stream of commerce.*" *Id.* § 82.001(4) (emphasis added). Under the Court's construct, if the plaintiff in the underlying claim, or the seller in the indemnity action, is unable to show that a particular manufacturer's product reached the plaintiff and could have caused the alleged injury, that manufacturer has no indemnity obligation under the statute. The Court's construction, however, requires that we read the same phrase in the same section differently than we have with respect to sellers. Subsection 82.001(3) defines a "seller" as "a person who is engaged in the business of distributing or otherwise *placing, for any commercial purpose, in the stream of commerce* for use or consumption *a product* or any component part thereof." *Id.* § 82.001(3) (emphasis added). In *Fitzgerald,* we held that

a seller who did not place the particular product alleged to have injured the plaintiff in the stream of commerce was nonetheless a "seller" for purposes of section 82.002 and was thus entitled to indemnification from the manufacturer. 996 S.W.2d at 867. We reasoned that nothing in the statutory text required proof that the seller was in the distribution chain of the particular product that caused an injury. Id. Given that the statute uses the same phrase—"plac[es][the] product" "in the stream of commerce"—to define both manufacturers and sellers, Fitzgerald would appear to preclude a chain-of-distribution requirement for holding manufacturers to their statutory indemnity obligation. TEX. CIV. PRAC. & REM.CODE § 82.001(3), (4).

Further, our holding in *Fitzgerald* undermines the Court's reliance on common law principles instead of the statutory language to require a nexus between the manufacturer and the product. In *Fitzgerald*, we considered whether the Legislature intended section 82.002 to supplant *all* common law indemnification requirements, including the chain-of-distribution requirement, or only the requirement that the manufacturer be found liable. In holding that a seller need not be in the distribution chain for indemnity to apply, we recognized the dramatic changes the statute effected and the diminished import of the common law in this context:

> Even if the common law were clear on this issue, the manufacturer's claim that the Legislature intended to adopt the common law is not supported by the statute's legislative history and is contradicted by the statute itself. The Legislature must have been aware it was creating a new duty, not codifying existing law, because the statute says that the duty to indemnify under this section "is in addition to any duty to indemnify established by law, contract, or otherwise." *Thus, the state of the common law sheds little light on what the Legis-*

> *lature intended when it ... required manufacturers to indemnify sellers in section 82.002(a).*

*Fitzgerald,* 996 S.W.2d at 868 (emphasis added). Nevertheless, the Court invokes the common law to conclude that the statute requires a nexus between the manufacturer and the product the seller is forced to defend, reasoning that since common law indemnity is intended to hold harmless a party exposed to liability due to the wrongdoing of another, the statute too requires indemnity only if a manufacturer "was or would have been liable" in the underlying products liability action. 251 S.W.3d. at 486. In reaching this conclusion, the Court disregards our interpretation of the statutory scheme in *Fitzgerald* and the text of the statute itself, which entitles the seller to indemnity "without regard" to the outcome of the suit. TEX. CIV. PRAC. & REM.CODE § 82.002(e)(1). I agree with the federal district court that "[t]he law requires that manufacturers pay regardless of how an action is concluded; that includes actions that are resolved before discovery can show a chain of distribution," and that "[m]aking Owens prove that the manufacturers were in the chain of distribution would force the parties to litigate issues that are unnecessary under the statute." *Burden,* 332 F.Supp.2d at 1028; *see also Ansell Healthcare Prods., Inc. v. Owens & Minor, Inc.,* 189 S.W.3d 889, 895 (Tex.App.-Texarkana 2006, pet. filed).

The Court erroneously concludes that this case is indistinguishable from *General Motors Corp. v. Hudiburg Chevrolet, Inc.,* in which we held that the manufacturer of a component part not alleged to be defective in the plaintiff's pleadings did not owe a duty to indemnify the distributor of the finished product. 199 S.W.3d at 257. In so holding, we relied on section 82.002(f)'s requirement that a seller give notice to a manufacturer of "a product claimed in a

petition or complaint to be defective." Tex. Civ. Prac. & Rem.Code § 82.002(f). Based on the statute's language, we held that the key factor in deciding a manufacturer's duty to indemnify the seller was whether the plaintiff's pleadings claimed that the manufacturer's product was defective. *Hudiburg*, 199 S.W.3d at 257. *Seelin Medical, Inc. v. Invacare Corp.* demonstrates how one court of appeals has followed *Hudiburg*. 203 S.W.3d 867 (Tex.App.-Eastland 2006, pet. denied). In *Seelin*, the plaintiff's original petition contained allegations that a component part of a product that was manufactured by Invacare was defective. The plaintiff later amended his petition to exclude claims regarding Invacare's product. *Id.* at 868. Following *Hudiburg*, the court of appeals held that Invacare must indemnify the seller for defense costs incurred for the period of time during which the live petition contained allegations against Invacare's product, but not for expenses incurred after the petition was amended. *Id.* at 871–72. While a manufacturer need not be a named defendant to trigger the indemnity obligation, a manufacturer is not obligated to indemnify a seller "for defending unproved claims that were never made" or, as in *Seelin*, were no longer present. *Hudiburg*, 199 S.W.3d at 257. I agree with the *Seelin* court that the statute limits the scope of a manufacturer's indemnity liability to expenses incurred by the seller during the period of time the manufacturer's product is implicated by the plaintiff's live pleadings; any additional liability would violate the principal we established in *Hudiburg*. *Id.*

Here, the Court asserts "[t]here is no substantive difference between the position of the component-part manufacturer in *Hudiburg* and the position of Ansell and Becton in this case." 251 S.W.3d at 485. To the contrary, unlike the component-part manufacturer in *Hudiburg*, Ansell and Becton were named as defendants in the underlying suit and their products were specifically alleged to be defective. This case fits squarely within the scope of liability we described in *Hudiburg* and that was applied in *Seelin*: "the claimant's pleadings fairly allege[d] a defect in" Ansell's and Becton's products. *Hudiburg*, 199 S.W.3d at 257. In other words, Ansell and Becton are responsible for costs incurred by Owens & Minor only to the extent that their products are implicated by the plaintiff's pleadings; if Burden had dropped her claims against their products, Ansell and Becton would not be liable for any costs incurred by Owens & Minor after that point because, like the manufacturer in *Seelin*, there would no longer be a live claim against them.

Finally, our holding in *Meritor Automotive, Inc. v. Ruan Leasing Co.* supports the conclusion that a manufacturer must indemnify the seller for its defense of all allegations made against the seller, even if those allegations are not linked to a manufacturer's particular product. 44 S.W.3d at 89. In *Meritor*, we were asked whether a manufacturer must indemnify a seller for the seller's defense of an unsuccessful negligence claim against the seller. *Id.* at 87. Again relying on the statute's plain language, we held that a manufacturer must indemnify a seller for *all* claims in the products liability suit, including those alleging independent wrongdoing on the seller's part. *Id.* at 90. We reasoned that, since section 82.002(a) states that a "manufacturer shall indemnify and hold harmless [a seller] against loss arising out of a products liability action," and section 82.001(2) defines "products liability action" as "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product," the manufacturer's duty to indemnify extended to "*all* direct allegations against the seller that relate to plaintiff's injury as part of

the 'products liability action,' and that we exclude *only* those losses proven to have been 'caused by' the seller." *Id.* at 90 (emphasis added).

Our decision in *Meritor* illustrates the breadth of the indemnity the Legislature afforded sellers under section 82.002. In holding that manufacturers must indemnify sellers who successfully defend claims based on the seller's own negligence, we recognized that the indemnity obligation manufacturers bear extends even to claims unrelated to any wrongdoing by the manufacturer. The plain language of the statute and our prior cases compel the conclusion that section 82.002 requires a manufacturer to indemnify a seller for its entire defense unless the seller is found to be independently liable.

### IV. Policy

The Court asserts various policy considerations to support its interpretation of the statute. Construing the statute to require manufacturers to indemnify or defend all claims against a seller in a products liability action, the Court posits, would lead to absurd results, as it would place one manufacturer in the untenable position of having to defend another manufacturer's products. This might be impossible, the Court says, because the defense must be intimately familiar with the particular product in order to defend it, and a manufacturer might be forced to turn over proprietary information to a competitor in the course of the defense.

First, the statute does not require that the manufacturer defend claims against the seller. The statute only uses the words "indemnify and hold harmless." Tex. Civ. Prac. & Rem.Code § 82.002(a). While we have recognized that defending the seller fulfills the indemnity obligation, a manufacturer that considers the defense of another manufacturer's product problematic yet necessary to the seller's defense

could presumably implead the culpable manufacturer. If joinder is not an option, the manufacturer could choose to defend only its own product and indemnify the seller for the rest, for which it would be entitled to seek contribution. Better yet, the manufacturers could all agree to cooperate in the seller's defense, which the statutory scheme as I interpret it would seem to encourage. The federal district court's analysis on this point is persuasive:

> Consider this hypothetical: A consumer sues seven drug stores knowing he bought from four or fewer and not knowing which of the defendants supplied him. He took a prescription drug manufactured by two companies, and the claim is product defect. In this case, the statute works to oblige the makers to defend and to pay the sellers' modest costs, with the modesty of the costs depending on cooperation among the parties and judicial management. The gross costs will be much less if the makers step in the action promptly since no liability could independently attach to the sellers.

*Burden,* 332 F.Supp.2d at 1028.

Further, the concerns the Court voices about a manufacturer having to defend another manufacturer's product are surely magnified for a seller who is forced to defend multiple manufacturers' products in a products liability action. As the court of appeals in *Ansell Healthcare* recognized:

> The distributor is likewise in a poor position to attempt to defend the product manufactured by another.... The Legislature has elected to favor the innocent distributor over the manufacturers of allegedly defective products. The Texas Supreme Court has analyzed the statute in a light favorable to the innocent seller. Here, such an application results in requiring each manufacturer of an allegedly defective product sold by

an innocent distributor to assume a full defense of the distributor or indemnify it from losses incurred.

189 S.W.3d at 895.

The Court bases an additional policy point upon a 1968 Utah case about right-of-way, positing that when there are two innocent parties one party should not be entitled to pass on its litigation expenses to the other. 251 S.W.3d. at 488 (citing *Bettilyon Const. Co. v. State Rd. Com'n,* 20 Utah 2d 319, 437 P.2d 449, 449–50 (1968)). However, by enacting section 82.002, the Legislature made the policy decision in products liability suits to require even innocent manufacturers to indemnify innocent sellers for their litigation costs. The role of this Court "is not to second-guess the policy choices that inform our statutes . . .; rather, our task is to interpret these statutes in a manner that effectuates the Legislature's intent." *McIntyre,* 109 S.W.3d at 748. Here, the statute's text indicates the Legislature's intent to "hold harmless a seller" "without regard to the manner in which the action is concluded." Tex. Civ. Prac. & Rem.Code § 82.002(a), (e)(1). Requiring the seller to establish that a manufacturer was in the chain of distribution imposes a requirement that does not exist in the statute and contravenes the Legislature's indemnity scheme.

### V. Conclusion

I would hold that section 82.002 obligated Ansell and Becton to indemnify Owens & Minor against all claims that Burden alleged, not just those related to their own products. Because the Court holds otherwise, I respectfully dissent.