**Jennifer MIX and Jeffrey D. Mix, individually and as next friends of S.V. Mix, a minor, Plaintiffs,**

v.

**TARGET CORPORATION, a Minnesota corporation, and Bumbo Pty. Ltd., a foreign corporation, Defendants.**

No. EP–09–CV–382–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Oct. 27, 2010.

Chantel Crews, Ryan Sanders & Gluth, LLP, El Paso, TX, Elizabeth M. Cunningham, Ross Cunningham, Rose Walker LLP, Dallas, TX, for Plaintiffs.

Richard Andrew Bonner, Kemp Smith LLP, El Paso, TX, Tarush R. Anand, Brown Sims, P.C., Houston, TX, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant Target Corporation's (Target) "Motion for Summary Judgment" (Docket No. 40), filed on June 10, 2010, Plaintiffs Jennifer Mix and Jeffrey D. Mix's (Plaintiffs) "Response to Target's Motion for Summary Judgment" (Docket No. 44), filed July 1, 2010, and Target's "Reply to Plaintiffs' Response to Defendant Target

Corporation's Motion for Summary Judgment" (Docket No. 45), filed July 5, 2010 in the above-captioned cause. After due consideration, the Court is of the opinion that Target's Motion should be granted, for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In late July or early August of 2007, Plaintiff Jennifer Mix purchased a product known as the "Bumbo Baby Sitter" (Bumbo Seat) from a Target store in El Paso, Texas. Pls.' Second Am. Compl. ¶ 11; Resp. to Mot. Summ. J. Ex. 1, at 2. Plaintiffs' contend that the Bumbo Seat is designed to seat infants between the ages of three (3) months to approximately fourteen (14) months in an upright position. Pls.' Second Am. Compl. ¶ 8.

On October 19, 2007, Plaintiffs' daughter, S.V. Mix, allegedly fell out of the Bumbo Seat, onto a kitchen island, and then backwards onto a hard floor. *Id.* ¶ 12. Mrs. Mix claims that she witnessed the incident. *Id.* ¶ 13. Plaintiffs contend that S.V. Mix "suffered severe head injuries, including a skull fracture." *Id.* ¶ 12.

Plaintiffs have sued Target for strict products liability, negligence, misrepresentation, and bystander liability, *id.* ¶¶ 35–54, and seek to recover actual damages and exemplary damages from Target. *Id.* ¶¶ 64–67.

While non-manufacturing sellers, like Target, are normally not liable for the harm caused by the products they sell under Chapter 82 of the Texas Civil Practice and Remedies Code, Plaintiffs point to the "actual knowledge" exception to the rule in order establish Target's liability. *See* Tex. Civ. Prac. & Rem.Code § 82.003(a)(6)(2007).

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should find summary judgment appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712 (5th Cir.1994) (quoting *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir.1990)). If the moving party has satisfied its initial burden, the nonmovant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e)). When a moving party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). While a court will resolve factual controversies or disputes in the nonmovant's favor, it must do so "only when there is an *actual* controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis added). A court should not, "in the absence of any proof, assume that the nonmoving party could or

would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

When the moving party seeks summary judgment on a claim or defense where he does not bear the burden of proof, the moving party "should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). On claims where the nonmoving party will bear the burden of proof at trial, it may be unnecessary for the movant to introduce any evidence in order to prevail; rather "the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727 at 474 (3d ed. 2008); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that a motion for summary judgment may be granted in some cases "regardless of whether the moving party accompanies its summary judgment motion with affidavits").

## III.  ANALYSIS

In order for Target to be liable for the harm caused by the Bumbo Seat, an exception to Texas's products liability law must apply. After due consideration, the Court if of the opinion that none of the exceptions apply and that summary judgment as to Target is warranted.

### A.  Texas Law

#### 1.  *Chapter 82*

The Court has jurisdiction over this cause of action by virtue of diversity jurisdiction, and the claims in the action are grounded in products liability. Therefore the Court will apply Texas law over all claims and defenses. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Chapter 82 of the Texas Civil Practice and Remedies Code applies to products liability claims.[1] Tex. Civ. Prac. & Rem.Code §§ 82.001–82.008.

Section 82.003 of the Code precludes liability for a non-manufacturing seller of a product unless certain exceptions apply. "Seller" means an entity that "is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." Tex. Civ. Prac. & Rem.Code § 82.001. There is no dispute that Target meets the statutory definition of a seller in this cause. *See* Pls.' Second Am. Compl. 10, ¶ 38 ("Target is the 'seller' ... within the meaning of Section 82.001(3)....").

In order for a seller to be liable for the harm caused by a product, a claimant must prove one of seven exceptions.[2] The only

---

**1.** "Products liability" is defined as "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product where the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." Tex. Civ. Prac. & Rem.Code § 82.001(2).

**2.** A claimant must prove at least one of the following exceptions in order to establish liability:

(1) that the seller participated in the design of the product;

(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the

exception[3] that Plaintiffs rely on is the "actual knowledge" exception in Section 82.003(a)(6).

To establish that the "actual knowledge" exception applies, Plaintiffs must show that: "(A) the seller actually knew of a defect to the product at the time the seller supplied the product; and (B) the claimant's harm resulted from the defect...." Tex. Civ. Prac. & Rem.Code § 82.003(a)(6).

### 2. Case Law

The case law interpreting Chapter 82's "actual knowledge" exception is scant. A few courts, though, have dealt with the exception in determining whether a defendant has been improperly joined. *See Lott v. Dutchmen, Mfg., Inc.* 422 F.Supp.2d 750, 750–56 (E.D.Tex.2006); *Rubin v. Daimlerchrysler Corp.*, 2005 WL 1214605, at *6–7 (S.D.Tex. May 20, 2005); *Reynolds v. Ford Motor Co.*, 2004 WL 2870079, at *3–4 (N.D.Tex. Dec. 13, 2004). The analysis conducted by some of these Courts is instructive in conducting the present analysis.

The Supreme Court of Texas has explained that the intended purpose of Chapter 82 is to "protect innocent sellers who are drawn into products liability litigation solely because of the vicarious nature of that liability by assigning responsibility for the burden of the litigation to product manufacturers." *General Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 262 (Tex.2006). Primary liability is effectively placed on the manufacturer, as opposed to the innocent seller, since manufacturers are usually in a better position to recognize and remedy product defects. *See Graco, Inc. v. CRC, Inc. of Texas*, 47 S.W.3d 742, 745 (Tex.App.2001). Additionally, the provisions of Chapter 82 were crafted in order to provide an equitable balance between protecting the right of the consumer to sue any party placing a product into the stream of commerce and protecting innocent sellers from the unfairness of the financial burden of establishing the seller's lack of liability. *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 868–69 (Tex.1999).

It is particularly instructive that, in drafting Chapter 82, the Texas Legislature "used 'knew,' not 'should have known'" of a defect. *Lott*, 422 F.Supp.2d at 754. For example, in *Peterson v. Sam's East Inc., et al.*, EP–07–CV–258–PRM (W.D.Tex. Dec.

---

product's installation onto the assembled product;
  (4) that:
    (A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;
    (B) the warning or instruction was inadequate; and
    (C) the claimant's harm resulted from the inadequacy of the warning or instruction;
  (5) that:
    (A) the seller made an express factual representation about an aspect of the product;
    (B) the representation was incorrect;
    (C) the claimant relied on the representation in obtaining or using the product; and
    (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;
  (6) that:
    (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and
    (B) the claimant's harm resulted from the defect; or
  (7) that the manufacturer of the product is:
    (A) insolvent; or
    (B) not subject to the jurisdiction of the court.
Tex. Civ. Prac. & Rem.Code § 82.003(a).

3. Plaintiff initially claimed that Defendant was liable under two exceptions: § 82.003(a)(5) ("express factual representation") and § 82.003(a)(6) ("actual knowledge"). However, Plaintiffs stipulate to dismiss the misrepresentation claims against Target "in light of the fact that Plaintiffs did not received any representations from Target." Resp. to Mot. Summ. J. 6 & n. 19.

4, 2008), the Court held a trial involving an allegedly defective ladder in which the plaintiff alleged that Sam's Club had actual knowledge of a defect. *Id.* However, even though a third party laboratory performed testing on the ladder at the request of Sam's Club and the ladder received unsatisfactory ratings in years leading up to the purchase, the plaintiff could not show that the results of these tests equated to actual knowledge of a defect at the time of the purchase. *Id.* As a result, the Court dismissed the claims against Sam's Club at the conclusion of the evidence.

The main question in this cause thus becomes, at the time Plaintiff Jennifer Mix purchased the Bumbo Seat from Target, did Target *actually know* of any *defects* in the product?

### B. Application

Plaintiffs allege that "at the time that Target sold the Bumbo Seat in question, Target actually knew that the Bumbo Seat at issue was defective because it did not have a seatbelt." Pls.' Second Am. Compl. ¶ 44. Plaintiffs specifically claim that Target received "at least one—if not two—consumer complaints at the time that it sold the Bumbo Seat to Ms. Mix." *Id.* Plaintiffs also point to pleadings filed in "at least two different lawsuits" involving claims that children had fallen out of other Bumbo Seats. *Id.;* Resp. to Mot. Summ. J. 7. This "defect" allegedly led to the harm suffered by S.V. Mix. Pls.' Second Am. Compl. ¶ 44.

Plaintiffs' contend that *Rubin v. Daimlerchrysler Corp.* provides clarification on what constitutes actual knowledge of a defect. 2005 WL 1214605. *Rubin* involved a motion to remand in which the Southern District of Texas considered whether there was a reasonable basis of recovery against an in-state defendant that sold a Jeep Grand Cherokee to the plaintiff. *Id.* at *1. The plaintiff here claimed that the seller

actually knew of a defect, *id.* at *6–7, and the Court allowed limited jurisdictional discovery regarding the seller's knowledge. *Id.* The Court instructed the seller to provide, *inter alia,* "all internal memos, letters, and complaints that [the seller] sent or received concerning an inadvertent gear shift problem in the Jeep Grand Cherokee before [the date of purchase]." *Id.* at *7. The jurisdictional discovery showed that the seller did not receive information about "a gear shift defect or complaints from consumers about inadvertent gear shifts in the Jeep Grand Cherokees." *Id.* As a result, the Court found that "no reasonable fact finder could conclude that the [seller] had actual knowledge about a gear shift defect in the 1999 Jeep Grand Cherokees when the Jeep was sold." *Id.*

Plaintiffs contend that *Rubin* "expressly found" that customer complaints about a product serve as "sufficient evidence" to demonstrate that the seller had actual knowledge that the product was defective. Resp. to Mot. Summ. J. 5, 8 (pointing to *Rubin,* 2005 WL 1214605, at *6–7). However, the Court reads the discussion of complaints in *Rubin* less expansively. While *Rubin* did list customer complaints one of the pieces of evidence that would be useful in making the "actual knowledge" determination, it placed no weight on customer complaints in an of themselves. The fact that a lack of complaints led to a finding of no actual knowledge does not necessarily mean that the demonstration of a customer complaint is "sufficient evidence" to demonstrate that the seller had actual knowledge.

Additionally, *Rubin* specified that the Court was looking for complaints specifically regarding the "inadvertent gear shifts." *Id.* That is, the Court was looking, not just for complaints about injuries, but for complaints concerning the alleged *defect.* In the present action, Plaintiffs point to one or two customer complaints,[4] yet

---

4. The second complaint was reported on August 8, 2007. Pls.' Resp. to Mot. Summ. J.

both stem from customers asking for refunds following minor injuries. Pls.' Resp. to Mot. Summ. J. Ex. 4, at 1. The first complaint states that the Bumbo Seat was "too small" for the purchaser's child and, as a result, the child fell out and "hit his head." *Id.* The second complaint states that, while the Bumbo Seat was "supposed to be for her daughter's age and weight," the child fell forward and "bumped her head." *Id.* Neither complaint mentioned the "defect" that allegedly resulted in S.V. Mix's injuries, that is, a lack of a seatbelt.

The Court finds that the complaints regarding injuries do not equate to "actual knowledge" of a "defect" under § 82.003(a)(6). The complaints would likely not even suffice to show actual knowledge of an injury. At best, they are allegations of an injury. Likewise, pleadings filed in other lawsuits are simply unverified allegations.[5] Under the Texas statute "liability cannot be based on an allegation that a seller should have known of a defect in a product." *Rubin,* 2005 WL 1214605, at *6 (referencing *Reynolds,* 2004 WL 2870079, at *3.).

## C. Gross Negligence

Plaintiffs specifically enumerate four claims against Target, namely, claims for strict products liability, negligence, misrepresentation, and bystander liability. Pls.' Second Am. Compl. ¶¶ 35–54. However, Plaintiffs also claim they are owed exemplary damages due to Target's gross negligence *Id.* ¶ 63.

## IV. CONCLUSION

Were the Court to accept Plaintiffs' reasoning, a non-manufacturing seller such as Target would be strictly liable anytime a complaint of an injury was recorded or a lawsuit was filed, without any further showing. This is inconsistent with the Texas statutory scheme that imposes liability against a non-manufacturing seller only when there is some additional culpability on of the part of the seller.

Based on the analysis of facts and legal principles, the Court concludes that Target's Motion for Summary Judgment should be granted.

Accordingly, **IT IS ORDERED** that Defendant Target Corporation's "Motion for Summary Judgment" (Docket No. 40) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Target Corporation is **DISMISSED** from this lawsuit.

**IT IS FURTHER ORDERED** that all pending motions brought by Defendant Target are denied as moot.

Ex. 4, at 1. The second complaint may or may not be relevant, depending on whether Plaintiffs purchased the Bumbo Seat in late July or early August of 2007. *See* Pls.' Second Am. Compl. ¶ 11.

5. Plaintiffs do not even address other related lawsuits in their "Response To Target's Motion for Summary Judgment." Docket No.

44. The Court still discusses the merits of the argument since Plaintiffs mention them in their Second Amended Complaint. Additionally, Plaintiffs did not request additional discovery to respond to Target's Motion for Summary Judgment, *see* Reply 4, so the Court considers the record before it as being complete for a summary judgment determination.