**Reversed and Remanded and Memorandum Opinion filed July 3, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00003-CV

---

### MARTIN PRODUCT SALES, LLC, Appellant

### V.

### BOMINFLOT BUNKER OIL CORP., Appellee

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2011-70309**

---

## M E M O R A N D U M   O P I N I O N

Appellee Bominflot Bunker Oil Corp. sued appellant Martin Product Sales, LLC on theories including statutory indemnity under the Texas Products Liability Act. Bominflot alleged that Martin had sold it bad marine fuel, and Bominflot sought damages including the amount it had paid the owner of a vessel allegedly damaged by the fuel. Bominflot moved for traditional summary judgment, which the trial court granted.

On appeal, Martin argues that summary judgment was improper because genuine issues of material fact existed regarding, among other things, whether an underlying lawsuit by the vessel owner was a "product liability action" as defined in section 82.001 of the Texas Products Liability Act. Because the complaint in the underlying lawsuit alleges a claim for breach of contract, we hold Bominflot has not proved that the underlying lawsuit was a "product liability action" as defined in the statute. We therefore reverse the judgment and remand for further proceedings.

### BACKGROUND

Martin blended together different fuel oils to produce the finished product of RMG 380 "bunkers," of which Martin then sold 15,000 barrels to Bominflot. The sales contract listed certain specifications to which the bunkers would conform, including typical levels of "APJ," "Sulfur, WT%," "CST@122F," "ASH, WT%," "Vanadium PPM," "Aluminum PPM," "Silicon PPM," and "MCR." Bominflot then sold the bunkers it purchased from Martin to Dole Fresh Fruit International Limited (Dole). Dole supplied the bunkers to the vessel M/V Dole Guatemala.

The vessel's owner sued Dole in the United States District Court for the Southern District of New York. The owner's complaint alleged that Dole signed a Charter Party in which it agreed to supply bunkers in accordance with the terms and specifications set forth in Clauses 4, 5 and 66 of the Charter Party, but that "[d]uring the course of the charter, disputes arose between the parties regarding [Dole's] supplying bad bunkers to the Vessel and unjustified deductions from hire under the Charter Party." The owner alleged that it had incurred $322,178.92 in costs and expenses due to Dole supplying a "quantity of bad bunkers," and that these sums were "due and owing . . . under the Charter Party."[1] The owner also

_____

[1] The petition also alleged $212,539.03 in costs and expenses due to unjustified

2

sought arbitration of the dispute "[i]n accordance with the Charter Party."

Dole informed Bominflot of the pending suit "regarding damage to vessel engine allegedly caused by bad bunkers" supplied by Bominflot. Bominflot then advised Martin of the claim, and requested Martin indemnify it and participate in any negotiations undertaken to resolve the disputes. Martin chose not to participate, asserting that the dispute was between Bominflot and Dole. Bominflot participated in mediation and agreed to pay $225,000 of a total $350,000 to the owner, with Dole paying the remaining $125,000.

Bominflot then sued Martin for breach of contract, breach of warranty, statutory indemnity under the Texas Products Liability Act, and common law indemnity. Bominflot moved for summary judgment on its statutory indemnity claim, seeking $225,000 in damages, a settlement amount Bominflot alleged was "reasonable, prudent, and in good faith under the circumstances;" $63,487.82 in attorney's fees, costs, and expenses defending against the owner's claims; $34,375 in attorney's fees incurred pursuing the action for statutory indemnity; and prejudgment and postjudgment interest. Bominflot also included estimates of its reasonable and necessary attorney's fees in the amount of $1,100 should Martin file a motion for new trial and $16,500 should Martin appeal. Bominflot attached various documents to the motion, including its sales contract with Martin for RMG 380, emails between employees of Bominflot and Martin discussing the vessel owner's lawsuit, the owner's federal-court complaint, a summary of costs for the vessel, a signed "Mediation Confidentiality and Fee Agreement," and its attorney's affidavit regarding attorney's fees. Bominflot also attached lab and expert reports from tests performed on fuel pump components from the vessel's engine and samples of Martin's fuel.

_____

deductions, and $67,637.86 in interest on its claims.

The trial court granted Bominflot's motion for summary judgment on statutory indemnity, and it signed a final judgment disposing of all issues and all parties.

## ANALYSIS

Martin's three issues on appeal challenge the summary judgment for Bominflot. Because it is dispositive of this appeal, we need only reach Martin's first issue, in which it contends Bominflot did not prove as a matter of law that the underlying lawsuit is covered by the Texas Products Liability Act.

## I.      Standard of review

We review a trial court's grant of summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Viewing the evidence in the light most favorable to the non-movant, we indulge every reasonable inference and resolve any reasonable doubts in the non-movant's favor. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Evidence is considered conclusive if reasonable people could not differ in in their conclusions. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Ron v. AirTran Airways, Inc.*, 397 S.W.3d 785, 788 (Tex. App.—Houston [14th Dist.] 2013, no pet.). For a plaintiff moving for summary judgment on a cause of action, this requires conclusively proving all essential elements of its claim as a matter of law. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

**II.    Bominflot did not prove that the underlying lawsuit was a "products liability action."**

Bominflot sought indemnity under the Texas Products Liability Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.002 (West 2011). The Act predicates a manufacturer's statutory duty to "indemnify and hold harmless a seller against loss" on proof that the loss "ar[ose] out of a products liability action." *Id.* § 82.002(a). The statute defines a "products liability action" as "any action against a manufacturer or seller for recovery of damages arising out of . . . property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." *Id.* § 82.001(a). Regardless of the theory of liability, the action must arise out of a claim for damages "allegedly caused by a defective product." *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex. 1999) ("[O]nly manufacturers of a product alleged by a plaintiff to be defective are subject to a claim of indemnity.").

Although Bominflot is correct that it need not prove the bunkers were actually defective to prevail on summary judgment, it did have to prove as a matter of law that the bunkers were "claimed in a petition or complaint to be defective" within the meaning of the Act. *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex. 2006); *see Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001) ("[T]he manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings . . . ." ); *see also Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481, 485 (Tex. 2008) (Brister, J., concurring) ("Burden's pleadings . . . cannot be fairly read to allege that Ansell or Becton made any latex gloves except their own. Making them provide indemnity for other gloves would make them indemnify a claim the plaintiff never made.").

5

The Texas Products Liability Act does not contain a definition of "defective product." *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.001. The Supreme Court of Texas has held that the term refers to "a product unreasonably dangerous because of a defect in marketing, design, or manufacturing." *Meritor Auto., Inc.*, 44 S.W.3d at 88 (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995)); *see also SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 449 (Tex. 2008) ("[A] seller of a defective and unreasonably dangerous product may be liable . . . ."). Bominflot has not offered an alternative definition of defective, so we need not decide whether defective may also have other meanings under the Act.

Here, Bominflot relies upon the vessel owner's complaint in the underlying federal-court suit, which alleged that bunkers were to be supplied "in accordance with the terms and specifications set forth" in "Clauses 4, 5 and 66 of the Charter Party," that "costs and expenses [were] incurred as a result of a quantity of bad bunkers having been supplied to the Vessel by the Defendant," and that those costs and expenses were "due and owing to Plaintiff under the Charter Party." The complaint also sought arbitration "[i]n accordance with the Charter Party." The complaint does not use the words "defective" or "unreasonably dangerous," identify any defect in the bunkers' marketing, design, or manufacturing, or provide any explanation for its claim that the bunkers are "bad" other than its references to the Charter Party, which is not included in the record. Read in the proper light, we conclude that the language of the complaint stating a claim for breach of the Charter Party by supplying "bad" fuel that failed to conform to the specifications agreed upon by the parties does not show as a matter of law that the loss arose from a product liability action.

We agree with Bominflot's contention that the allegations of "bad bunkers" damaging the vessel allege "property damage" falling within the indemnity statute.

6

The statute requires more than an allegation that property damage was caused by a manufacturer's product, however. The statute also requires an allegation that the property damage was "caused by a *defective* product," Tex. Civ. Prac. & Rem. Code Ann. § 82.001(a) (emphasis added), which is absent from the federal-court complaint for the reasons we have just explained. The bunkers could be "bad" when measured against the Charter Party's requirements and even cause damage to property without necessarily being defective. *Cf. Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006) (noting that Texas law does not generally recognize product failure standing alone as proof of product defect).[2]

We are mindful that Bominflot's own petition *in this case* alleges that the bunkers had qualities "not normally present in RMG 380 and marine fuel generally, as they can and will damage engine components during fuel combustion." In addition, Bominflot attached evidence to its motion for summary judgment that "unusually high acidity levels" in the bunkers caused the vessel's damage. But Bominflot cannot invoke statutory indemnity by using evidence outside the record of the underlying case to recast or recharacterize the allegations of liability in that case. As explained above, the indemnity inquiry focuses on whether the underlying federal-court complaint alleged a products liability action. *See also Gen. Motors Corp.*, 199 S.W.3d at 261 ("[T]he duty to indemnify is triggered by a claimant's pleadings, not by proof of defect . . . .").

---

[2] Citing *David Rafes, Inc. v. Huml*, 2009 WL 3491043 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.), Bominflot contends that the words "bad" and "defective"—with respect to products—implicitly mean the same thing. In that defamation case, however, the court simply noted the trial court's use of the word "bad" to describe the plaintiff's product in the course of concluding that there was sufficient evidence the defendants' statements about the product were substantially truthful. *Id.* at *5. We disagree with Bominflot that using the word "bad" means that a product is defective in a manner that can support legal liability. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989) ("Practitioners—as well as the courts—should exercise care to see that [definitions of defect] are used precisely.").

7

For these reasons, Bominflot has not shown as a matter of law that the underlying complaint alleges that Martin's bunkers are a defective product. We therefore sustain Martin's first issue and hold that the trial court erred in granting summary judgment for Bominflot on its statutory indemnity claim.

## CONCLUSION

Having sustained Martin's first issue, we reverse the judgment of the trial court and remand for further proceedings.

/s/ J. Brett Busby
Justice

Panel consists of Justices McCally, Busby, and Donovan.